Jones, J.,
dissenting. The accident occurred in the outskirts of the city of Delaware. The interurban car was proceeding along Sandusky street in a sparsely populated suburb of that city, and the collision of the car with the buggy in which the decedent was driving occurred at the crossing of that street with Olentangy avenue, a thoroughfare approaching Sandusky street at right angles. There is a conflict in the testimony as to whether the motorman sounded his signal, and as to the rate *319 of speed the interurban car was moving at the time of the accident. There is no dispute in the testimony that the decedent was driving on Olentangy avenue towards the crossing in question in an enclosed buggy. Four eyewitnesses testified to the accident, two for the plaintiff and two for the defendant. These witnesses testified that the car and buggy approached the crossing simultaneously. By the exercise of care the motorman and the decedent could have seen each other before the crossing was reached. There is no dispute but that the horse and vehicle “continued” from a distance of from twenty-five to fifty feet from the crossing, as testified to, until the crossing was reached, the only divergence upon that point being whether the horse was walking toward the crossing or jogging along on a trot.
Under this state of facts the court charged the jury: “If .you find, therefore, that there was negligence upon the part of the railroad company, and negligence upon the part of Albert N. Gillette in driving upon this track in front of an approáching car, if he did, then you will proceed and examine the conduct of the motorman, after he had discovered, or, by the exercise of ordinary care, ought to have discovered, the danger in which Albert N. Gillette was at the time. As we have said, it was the duty of the motorman to have his car under control; that is, this car must be in the power of the motorman to such an extent as that when he saw this horse and buggy on the track, or when, by ordinary care in his duty for looking for vehicles, he ought to- have seen this buggy on the *320 track, he could stop his car within reasonable time and distance so as to avoid, if possible, the collision or accident.”
That this portion of the charge was effective in producing the verdict is self-evident. The record discloses that the jury returned for further instructions upon this point, and that the foreman asked the court “to read that part of the charge referring to a similar case where negligence may be found on both sides.” The court thereupon read to the jury the charge quoted, whereupon the foreman answered, “I guess that is sufficient, as far as I am concerned.”
The record therefore discloses, since the verdict of the jury was evidently based upon this particular instruction, that the same, if erroneous, was highly prejudicial. That the charge so given is erroneous, under the facts stated, is evident not only from the decisions of our own court, but from the pronouncement of other jurisdictions which have refused to approve a similar charge under the facts disclosed. Why the triql court gave this instruction in its general charge, and emphasized it by repetition, is beyond comprehension, since it not only failed to follow the express rule of this court upon the subject but refused to submit to the jury special re-' quest No. 8, asked by decedent’s counsel on the trial, which, if justified by the facts offered, would have been less objectionable. That instruction was as follows:
“The court instructs you that even if you' should find that the decedent, Gillette, was guilty of some negligence in driving on the track in front of the *321 approaching car, yet, if the motorman in charge of the car, in the exercise of even ordinary care, after he saw the horse and buggy, and appreciated Gillette’s peril, had time and opportunity to avoid the possible consequences by stopping the car, and neglected to exercise such care, such neglect would be negligence and might properly be regarded as the proximate cause of the injury.
If it be conceded that the petition makes a case of “the last clear chance,” and in our view it does not, the general charge permits recovery by the plaintiff in case the jury found that both the motorman and the decedent were negligent in their manner of approaching the crossing. The italics used in this case are our own, and are used to show wherein the trial court committed error. The legal doctrine of the last clear chance, or “newly discovered peril,” can only be applied to those cases where the facts warrant. It is never applied where the negligence of both defendant and plaintiff is concurrent and so coincident in point of time as to be the proximate cause of the injury.
The principle is a humanitarian one, developed in the evolution of our modern jurisprudence, and in some instances extends to an injured person the right to reparation even though he himself is negligent. But where the negligence of both combine proximately to produce the injury there can be no recovery by either. The development of the principle now favors an injured person, though he has negligently placed himself in a perilous situation, where the defendant has discovered and ap *322 preciated that peril and was thereafter bound to use ordinary care to protect him from injury. It is the knowledge of the peril that gives rise to the new and special duty of protecting one who himself , has been negligent. The law, then, says in effect: Though one has been negligent he shall not be penalized if another after notice thereof fails to exercise due diligence towards his protection. In such a case the law regards the prior negligence of the injured person as remote, for the reason that the defendant might later have prevented the injury, and, if defendant does not use such care for the protection of one it knows to be in a perilous situation, that lack of preventive care becomes the proximate cause of the injury. This principle is clearly avowed by this court in The Erie Railroad Co. et al. v. McCormick, Admx., 69 Ohio St., 45. The charge given in the case at bar is in direct' conflict with the law established in the case just cited, and in the later case of Drown v. The Northern Ohio Traction Co., 76 Ohio St., 234.
It is incomprehensible why the syllabus in this case has not attempted to overrule or distinguish these two cases and to clarify the “last chance” rule - for the benefit of the bench and bar of this state. The opinion seems to rely for authority on the cases of Railroad Co. v. Kassen, 49 Ohio St., 230, and The Steubenville & Wheeling Traction Co. v. Brandon, Admr., 87 Ohio St., 187. The Kassen case was distinguished by this court in the case of Erie Railroad Co. v. McCormick, supra, where the court say on page 53: “The concrete rule upon the subject is, that if one is upon the track of a railway *323 company by his own fault and in peril of which he is unconscious, or from which he cannot escape, and these facts and conditions are actually known by the engineer, it is his duty to exercise all reasonable care to avoid the infliction of injury.” That opinion clearly analyzes the former decision and holds that in the Kassen case “the actual knowledge of the employes of the company in charge of the forward train was its [the company’s] actual knowledge,” that the “liability of the company was placed upon the sole ground that after receiving actual notice that Kassen was upon the track and in a position of peril, it failed to use the means at hand to avoid injury to him,” and that “the doctrine, of the case can have no application where neither the company nor its employes operating the train by which the injury is inflicted may be charged with actual knowledge.” The Kassen case was also distinguished in the Drown case, supra. In the case of The Steubenville & Wheeling Traction Co. v. Brandon, Admr., supra, the rule of the last clear chance was not invoked. That case held simply that the failure of the plaintiff to look for the approaching car did not as a matter of law defeat his right of recovery. The' triad court directed a verdict for the defendant upon the theory that plaintiff’s evidence was not sufficient to go to the jury for the reason that it became the absolute duty of the plaintiff, as a matter of law, to look out for the traction car. This court held that the failure to look for the approach of the car before attempting to cross was not, in this state, negligence as a matter of law, but that the circumstances surrounding that case should have *324 been submitted to the jury to determine whether or not such failure was in fact negligence. The question involved in that case was not involved in this, and this court did not undertake to overrule the McCormick case, supra, as appears from the close of the opinion of Judge Spear, as follows: “But, assuming that Brandon was guilty of some negligence in driving on the track, yet if the motorman, in the exercise of even ordinary care, after he saw the horse and appreciated Brandon’s peril,” had failed to exercise ordinary care, in that event that neglect could be regarded as a proximate cause of the injury.
By its instruction in the case at bar the court took upon itself to say to the jury that notwith-' standing the peculiar facts presented, the plaintiff could recover even if his negligence was concurrent and of the same character as that of the defendant. Instructions applied to facts similar to this case and using substantially the same language have generally been held to be erroneous, as will be found in some of the following cases, which discuss at length the principle involved: Thompson v. Los Angeles & S. D. Ry. Co., 165 Cal., 748; Evansville Rys. Co. v. Miller, 111 N. E. Rep., 1031; Himmelwright v. Baker, 82 Kans., 569; Indianapolis Trac. & Term. Co. v. Croly, 54 Ind. App., 566; International & G. N. Ry. Co. v. Ploeger et al., 96 S. W. Rep., 56, and Dyerson v. Union Pac. Rd. Co., 74 Kans., 528. It is true that cases are found that authorize a recovery, where the plaintiff has been negligent, if the defendant ought to have had opportunity for discovering his peril. It is evident *325 that these cases are at variance with the McCormick case. But an examination of the decisions which support this apparent view will disclose that they were generally based upon a state of facts entirely different from the instant case. In such cases recovery is permitted under circumstances where the negligence had ceased or spent its force and therefore became the remote and not the proximate cause of the injury. Being the remote and not the efficient cause of the injury, the defendant, under the doctrine of the last clear chance, has been held liable for the injury, whether it knew of the decedent’s peril or ought to have known of it in the exercise of ordinary care. Where the plaintiff has been negligent, as where he has negligently placed himself in a dangerous position from which he is unable to extricate himself, as where a driver has negligently placed himself in a situation from which he is unable to escape, or where a traction engine has stalled on a railroad crossing some time before the collision, or where a pedestrian has negligently walked along a railway and become helpless or asleep on the track, and in a situation where the employes of the company would have discovered his peril if ordinary care were used, some courts have held under such circumstances that failing to see might be held to be the proximate cause of the injury; but even in these cases recovery is denied' where the negligence of both parties continues and concurs up to the time of injury. In support of this exception to the rule-the textbook cites the jurisdictions of Ohio, North Carolina and Virginia. The Kassen case is cited from Ohio as supporting *326 the text, but that case has been distinguished by a later decision. In North Carolina the exception has been applied where the injured person had been asleep or in a helpless condition, though previously negligent. (Carter v. Southern Ry. Co., 135 N. C., 498, and Swayer v. Roanoke Rd. & L. Co., 145 N. C., 24.) And in Virginia, although the text seemed to have support in the earlier cases, the court, later clarified the question and applied the doctrine to those cases where there was something in the condition or situation of the injured person to ad-monish the defendant that he was not able to protect himself, but held that it had no application where the plaintiff’s negligence continued to the time of the collision. Roanoke Ry. & Elec. Co. v. Carroll, 112 Va., 598, and Southern Ry. Co. v. Bailey, 110 Va., 833.
By the charge in this case, however, the doctrine of contributory negligence, long recognized in this state, has been emasculated, since the charge permits recovery by a negligent person even though that negligence concurred in and was a proximate cause of the injury. It was accordingly at variance with the decision in the case of Drown v. The Northern Ohio Traction Co., supra.
The fallacy in applying the charge to cases of this character is clear. Let it be assumed that two motor vehicles are approaching a crossing over thoroughfares meeting one another at right angles, and that in their approach each driver is negligent in not seeing the other. Would any principle of law uphold the right of either or both of the parties to invoke the rule of the last clear chance ? It is evi *327 dent that neither could do so because of the culpable negligence of each in such approach. Could it be said that either or both could have a recovery under such a charge as was given to the jury in this case? And though a judgment had been secured by one suing first, upon the theory that the other ought to have observed his approach, would it not follow, under the instruction given, that the other, or second driver, in a later action, could also secure a judgment upon the theory that the first ought to have seen the second vehicle in time to have avoided the accident ? Such is the effect of the instruction given in this case.
The doctrine of the last clear chance is the development of the rule announced in Davies v. Mann, 10 M. & W., 546. In that case the plaintiff had fettered his ass and turned him upon the highway to graze. It appears that there was no plea of imputed negligence; but a careful inspection of. the case fails to reveal but that the defendant may have had actual knowledge of the presence of the ass upon the highway. The court there held that unless it was shown that the donkey’s presence was the immediate cause of the injury plaintiff’s negligence was no defense, and that, if the proximate' cause of the injury was the fault of the defendant’s servant in driving too fast, the mere fact of a prior placing of a fettered ass upon the road would not defeat recovery. It is evident in that case, irre-. spective of the question of the defendant’s actual knowledge, that the decision was based on the fact that the plaintiff’s negligence was not an immediate factor producing the injury but was a remote and *328 not the proximate cause. The active negligence of placing the fettered ass in the highway had ceased an appreciable time before the subsequent act of the defendant, and did not continue and concur with the defendant’s negligence in producing the accident. That the court of exchequer did not intend to overrule the established doctrine that the concurring negligence of both parties would defeat a recovery is evident from their previous decision in the case of Vennall v. Garner, 1 Cr. & M., 21, where at least one member of the court was also a member of the court that later decided the case of Davies v. Mann. In the Vennall case, involving a recovery where two ships came into collision, Sir John Bayley, a baron of the exchequer court, held as follows: “I quite agree, that if the mischief be the result of the combined negligence of the two, they must both remain in statu quo, and neither party can recover against the other.”
This principle found early lodgment in this state in the case of Kerwhaker v. The Cleveland, Columbus & Cincinnati Rd. Co., 3 Ohio St., 173, where it was held that “When the negligence of the defendant on a-suit upon such ground of action, is the proximate cause of the injury, but that of the plaintiff only remote, consisting of some act or omission not occurring at the time of the injury, the action is maintainable.” (Italics ours.)
This rule is recognized in practically every jurisdiction; and the case of Drown v. The Northern Ohio Traction Co., supra, is simply an elaboration of that principle. In the case at bar the motorman might .well have assumed that the traveler ap *329 proaching the crossing would not attempt to pass in front of the car, but would stop before the point of danger was reached. N. Y., C. & St. L. Rd. Co. v. Kistler, 66 Ohio St., 326; Thompson v. Los Angeles & S. D. Ry. Co., 165 Cal., 748; Roanoke Ry. & Elec. Co. v. Carroll, 112 Va., 598; Ill. Cent. Rd. Co. v. Ackerman, 144 Fed. Rep., 959, and Thompson on Negligence (White’s Supp.), Section 1601, and authorities there cited.
The concrete rule upon the subject is found in 29 Cyc., 530, where it is stated that a person guilty of negligence in exposing himself to danger may still recover, if the defendant, after knowing of such danger, could have avoided the injury by the exercise of ordinary care. But it is stated that “This rule has no application where the negligence of the person injured and of defendant are concurrent, each of which at the very time when the accident occurs contributes to it.” See also 33 Cyc., 854.
The first proposition of the syllabus in the instant case, as an abstract proposition of law, is without criticism, for the element of decedent’s negligence is lacking, and it therefore cannot be applied to the charge in this case where such negligence may be found by the jury. The latter part of the second proposition is not apropos, either to the case made or to the charge given, for two vital reasons. It fails to require the element of appreciation of the decedent’s peril after seeing him “a considerable distance from the crossing.” Furthermore, what is meant by the expression, the decedent may.have been originally negligent? Does it imply a cessa *330 tion of decedent’s negligence, or that it was so remote as not to constitute a proximate. cause of the accident?. That phase is not charged in the petition, not suggested in the evidence, nor contemplated in the charge under consideration. Unfortunately the charge given assumes a present, concurring negligence. The language used was: “If you find, therefore, that there was negligence upon the part of the railroad company, and negligence upon the part of Albert N. Gillette in driving upon this track in front of an approaching car.” The car and buggy approached the crossing, simultaneously. The verdict is justified in the majority opinion notwithstanding the charge, because the motorman, near the point of collision, did see the decedent. So did the engineer see the deceased in the McCormick case, supra. It is true the court in that case held that no duty rested upon the railway company to construct its bridge otherwise than it did, and that the trackwalker was not among that class of persons to whom was owing the duty requiring the giving of crossing signals. These features of course are not in the present case, and do not affect it, and it is difficult to perceive their relevancy. Upon the main question the cases are not distinguishable. In both cases a duty arose requiring the exercise of ordinary care, but this duty became existent after the discovery and appreciation of the peril. The present case presents a much stronger reason for the application of the principle under discussion than does the McCormick case, for in the latter it' was an issuable fact whether the injured person could have escaped from a situation *331 in which he had theretofore negligently placed himself.
In the present case the motornjan testified he first discovered the horse when it was fifty feet from the track. If the court had confined his charge to the motorman’s duty after he saw the horse and appreciated the decedent’s peril, the charge might have been consistent with the McCormick case, if concurring negligence were absent. But driving along Olentangy avenue as decedent did, the language employed by the court — to the effect that the jury should have examined “the conduct of the motorman after he had discovered, or, by the exercise of ordinary care, ought to have discovered,” the decedent’s danger — could only apply to the motorman’s conduct in not earlier discovering the impending peril at any point along Olentangy avenue, and thus impose the duty of ordinary care upon the motorman in case he should have earlier discovered the decedent’s perilous situation. The charge could have been understood in no other sense. In other words, the same duty of ordinary care that was required after actual discovery was imposed upon the motorman in case he “ought to have discovered” the peril.
It is difficult to see how the trial court could have gone astray in this case, especially in view of the adjudicated cases reported by this court. It may be said that the several circuit courts of this state have not been in doubt as to the proper rule to apply in cases of this character since the decision of The Erie Railroad Co. et al. v. McCormick, Admx., supra, distinguishing the Kassen case. The *332 latter case was decided by this court in 1892, and there might have been some justification for giving such instructions under that decision, before the pronouncement of this court in the case of Erie Railroad Co. v. McCormick, Admx., supra. Since the latter decision the appellate courts of this state generally have found no trouble in applying the proper legal principle to cases of this character. Counsel for the defendant in error, as did the court of appeals, relied upon the old case of The L. S. & M. S. Rd. Co. v. Schade, Admr., 15 C. C., 424, decided by the eighth district in 1895, a case which the old circuit court decided upon the authority of the Kassen case, supra. Hale, J., a member of that court, in his dissenting opinion clearly distinguishes the Kassen case upon a course of judicial reasoning later followed by this court in the case of Erie Railroad Co. v. McCormick, decided October 13, 1903. Since the decision of the latter case, the circuit court of the eighth judicial district, in at least three reported cases has expressly repudiated the doctrine announced by it in the Schade case, one of which is The Northern Ohio Traction Co. v. Drown, 7 C. C., N. S., 549. The circuit court of the first judicial district in Hamilton county denied recovery in The Cincinnati Traction Co. v. Jones, 13 C. C., N. S., 319. The circuit court of the sixth judicial district refused to apply the last chance rule in the case of The L. S. & M. S. Ry. Co. v. Callahan, 2 C. C., N. S., 326. The circuit court of the seventh judicial district refused to follow the Schade case and distinguished the Kassen case in the case of The L. S. & M. S. Ry. Co. v. Harris, Admr., 3 C. C., N. S., *333 599. And the circuit court of the fourth judicial district has frequently held that the doctrine of the last clear chance cannot apply to a state of facts which permits a plaintiff to recover notwithstanding his own negligence and especially under such a state of facts as is disclosed here. The charge of the trial court was highly prejudicial, and the erroneous charge was effective in producing the verdict, as evidenced by the record.
Matthias, J., concurs in the dissenting opinion.