# Wytheville

VIRGINIA ELECTRIC AND POWER COMPANY V. W. L. VELLINES.

June 14, 1934.

Present, Campbell, C. J., and Holt, Epes, Hudgins and Gregory, JJ.

The opinion states the case.

*Williams, Loyall & Taylor* and *T. Justin Moore,* for the plaintiff in error.

*O. L. Shackleford* and *Daniel Coleman,* for the defendant in error.

HOLT, J., delivered the opinion of the court.

Plaintiff, W. L. Vellines (defendant in error) is seeking to recover for damages to his automobile and for injuries to himself, sustained in a collision with one of the defendant's street cars at what is known as the 8th street crossing on its line running from Ocean View to Willoughby Spit. The car company there operates a double track electric line which can be crossed in safety only at certain designated crossings. Its tracks run east and west, and on either side of them, eight and two-tenths feet distant, is a sixteen foot concrete road. The track along which the car came that did the damage is straight for 1000 feet. Plaintiff lived in that neighborhood and was familiar with the local situation. He came into the street on a lane from his home which intersected the highway 150 feet from 8th street, turned to his right, continued to the west until 8th street was reached, when he turned to his left and was sruck in crossing the west-bound track.

A plat which we insert in this opinion makes it easier to understand the situation. Certain blocked figures there are supposed to represent successive positions of the automobile. Of course, they merely represent the draughtsman's ideas of what these positions were. The accident occurred at 6:54 A. M. on January 22, 1932. On that day the sun rose at 7:15. Interior lights in the street car had been cut out but the headlight was burning.

Plaintiff has recovered a verdict and judgment for $500.

Mr. Vellines, on direct examination, testified as follows:

"Q. Just tell the jury how this accident occurred, Mr. Vellines.

"A. That morning I came out of my lane and backed back, and looked around as I came into the road, all around good, to see everything was clear, and I got the car started and kept looking, and there was no car in

sight at all, and when I got near the crossing, some little distance from the crossing, I put the window down, and I put my hand out, and was nearly across the street car track and the crash came and knocked us.

"Q. When you started on that track, how far away was the car?

"A. When I first saw it, it looked like about 100 feet or 200 feet, or something like that—about 100 feet.

"Q. I am speaking of the car that struck you; how far was it away?

"A. I couldn't tell you exactly how far, but a hundred or two feet.

"Q. Have you any idea as it came around the curve?

"A. There was no car in sight when I first looked around.

"Q. There was no car in sight?

"A. No car in sight.

"Q. Did you continue to look for a car?

"A. Yes, I kept on looking.

"Q. Did you look both ways?

"A. Yes; I saw one coming from that way, and I had plenty of room.

"Q. A car was coming from Willoughby Beach?

"A. Yes.

"Q. And the car which struck you, which way was it going?

"A. To Willoughby Beach.

"Q. From Ocean View?

"A. Yes.

"Q. When you got to the track how far was the car that struck you away?

"A. I couldn't hardly tell you to save my life.

"Q. Did you see it?

"A. No, I didn't see no car, or I would never have been struck.

"Q. Were you looking?

"A. Yes, I was looking; I looked down that way; I looked this way until I thought I was safe, and I was looking at this car and my wife hollered.

"Q. Did you go on up there without looking in both directions?

"A. No.

"Q. When you got on the track was the car going from Ocean View towards Willoughby in sight?

"A. When I got on the track?

"Q. Yes.

"A. No, sir.

"By the court:

"Q. What did you say—'No, sir,' or 'I don't know'?

"A. I said no, sir."

He further testified in chief:

"Q. Do you know the distance from the crossing to the curve?

"A. From the crossing to the curb?

"Q. The curve in the direction of Norfolk?

"A. Do you mean the right-hand side?

"Q. I mean the curve in the street where the car tracks curve.

"A. Oh the curve: I guess about a thousand feet.

"Q. When you started on the track, had the front of it come around the curve.

"A. Come around the curve?

"Q. Yes, the curve around 1,000 feet?

"A. When I looked there wasn't no car in sight at all.

"Q. There was no car?

"A. No. I put my hand out, and I was in second gear—

"Q. (Interposing) Did you give the proper signal—

"Mr. Williams: (interposing) You interrupted him.

"By Mr. Coleman:

"Q. Were you in first or second gear?

"A. I went in first, and just about the time I got on the track I think I pulled in second gear."

On cross-examination he said:

"Q. I believe you said the first thing you knew of any street car was when the impact took place?

"A. Practically.

"Q. In other words, you didn't see this particular street car at all that struck you until the impact took place?

"A. Every time I looked there was no car in sight.

"Q. Then my statement, I assume, from what you just said is correct, that you did not see the street car which struck you until it did actually strike you?

"A. It might have been a little distance from me; it might have been a little distance, you understand, but I was practically across the track when I saw it. I couldn't help but seeing it a little ways from me.

"Q. What would you call a little ways—two or three feet?

"A. Ten or fifteen feet, I suppose. I couldn't say exactly to save my life.

"Q. I understood you, in response to Mr. Coleman's questions, to say you didn't see it until the impact took place; am I mistaken in that?

"A. I say it must have been about ten or fifteen feet, it was so close to me.

"Q. Then I believe you say you did see it, according to your best judgment, when it was about ten or fifteen feet from you?

"A. Yes.

"Q. And, at that time, you were already on the track?

"A. I was nearly across the track.

"Q. You were nearly across the track?

"A. Yes, sir.

"Q. And the impact took place almost before you could think?

"A. It was pretty quick, as fast as it was coming.

"Q. Now, Mr. Vellines, when you came out of your driveway on the boulevard, did you look to your left?

"A. I certainly did.

"Q. And did not see any street car?

"A. There was no street car in sight.

"Q. And then you traveled 150 feet and on the track and looked again?

"A. I looked and looked as I went along; I turned every once in a while and looked, and put my window down and put my hand out.

"Q. But you never did see the street car until you had practically crossed the track and it was in ten or fifteen feet of you: that is correct, isn't it?

"A. Yes, sir."

Again he said:

"Q. Now just before you made that turn, did you look to see if the street car was coming up in the rear of you?

"A. Yes, sir, I suppose about as far as the end of that rail.

"Q. The end of what rail?

"A. The iron rail there; I guess about twenty feet.

"Q. You looked when you were about twenty feet away?

"A. Yes, sir.

"Q. And you did not see the street car?

"A. No car was in sight then.

"Q. You could see down to the curve?

"A. I couldn't see clean to the curve without looking back of the car.

"Q. When you started in to make the turn you had a clear view then?

"A. I have already explained that to you.

"Q. Didn't you have a clear view then to your left?

"A. I had as clear view as I could to see some distance down.

"Q. You could see to the curve then?

"A. No, I couldn't see to the curve.

"Q. Why?

"A. It was not real light anyhow.

"Q. Did you have lights on your automobile?

"A. Yes, I had lights on my automobile.

"Q. You could see lights on a street car a long way off?

"A. I didn't see any. I didn't see any car."

To the same effect is this final statement:

"Q. And you were traveling about twelve miles an hour?

"A. Just about that. I was getting into second gear.

"Q. And, at that time, you looked to your left as far as you could see down the track?

"A. Yes, sir.

"Q. And there was no street car in sight?

"A. There was no car in sight, and when I looked up I saw the other car, and I could just see it ten or fifteen feet and it come plowing and tore us right up."

■ These somewhat extended excerpts from plaintiff's testimony are made necessary by the fact that the decision of this case turns upon his evidence. He is bound by his account of what he saw and did. *Massie* v. *Firmstone,* 134 Va. 450, 114 S. E. 652, and cases which have followed it. A plaintiff who has no case upon his own evidence has no case at all. He said that he looked and saw no car coming, and that none was in sight when he signaled his purpose to turn into 8th street, for he looked and saw none until it was immediately upon him. He, at least, cannot complain because we accept his statements as true.

It is contended that it was still dark at the time of the accident. If he could not, because of darkness, see the street car, its motorman, for the same reason, could not

have seen him or any signals which he might have made. The accident occurred at about 6:45 A. M. On that day, January 22, 1932, the sun rose at 7:15. The official record of the United States Weather Bureau tells us that the visibility then was good. The day was cloudy but the ceiling was high, and, as we have seen, the headlight of the street car was burning. The car which struck him was going rapidly. Vellines estimates its speed from fifty to sixty miles an hour, but the evidence is that cars of this type cannot go more than thirty-seven miles an hour. The automobile was knocked twenty or twenty-five feet and landed against a telegraph pole. The street car, according to the plaintiff's evidence, ran for 145 or 150 feet beyond the crossing before it was brought to a stop.

█ Without undertaking any discussion of the evidence we are of opinion that it is sufficient to sustain the verdict to the extent that it found the defendant guilty of negligence; indeed we do not understand that its sufficiency in this respect is seriously questioned.

█ It is the contributory negligence of the plaintiff which prevents a recovery. Plaintiff undertook to cross the car track without taking reasonable precautions for his own safety. This not only was due to himself but to others whose rights were co-equal with his own. Our reports are full of cases to this effect. See *Virginia Elec. & Power Co.* v. *Bennett,* 156 Va. 910, 159 S. E. 93. Moreover, we have a statute which governs such a situation. Code Supp. 1932, section 2154 (122):

█ "Every driver who intends to start, stop or turn, or partly turn from a direct line, shall first see that such movement can be made in safety, and whenever the operation of any other vehicle may be affected by such movement shall give a signal as required in this section, plainly visible to the driver of such other vehicle of his intention to make such movement."

According to the plaintiff's own testimony he gave no signal which was plainly visible, but gave it when the street car was not yet in sight. It is possible to picture

conditions in the nighttime to which this statute would not apply, but in any event to escape the burden of contributory negligence a plaintiff must use reasonable care, and high caution is at times but reasonable care.

■ It is entirely probable that plaintiff's attention was directed to a street car approaching from the west on the far track. This, though it may explain his conduct, does not excuse it; one must look with care.in both directions.

■■ The court was of the opinion that the doctrine of the last clear chance might be applied and so told the jury. This was error. This is a humane doctrine and should be upheld but it must be applied with caution. The burden of proof is upon the plaintiff and he must show that the chance was clear. "Perhaps" is not enough. The minds, nerves and muscles of men are not so accurately coordinated as that there can be instantaneous action to meet an emergency. *Norfolk Southern R. Co.* v. *White's Adm'x,* 117 Va. 342, 84 S. E. 646. Plainly it was not intended that it should wipe away and supersede the defense of contributory negligence.

■ In *Norfolk Southern R. Co.* v. *Smith,* 122 Va. 302, 94 S. E. 789, 790, Judge Prentis said: "The doctrine of the last clear chance has nowhere been better stated than in the syllabus to the case of *Roanoke Ry. & Elec. Co.* v. *Carroll,* 112 Va. 598, 72 S. E. 125, thus: 'The underlying principle of the doctrine of the "last clear chance," as declared by the decisions of this court, is that, notwithstanding the contributory negligence of the plaintiff, there is something in his condition or situation at the time of the injury to admonish the defendant that he is not able to protect himself. The doctrine is one of prior and subsequent negligence, or of remote and proximate cause, and presupposes the intervention of an appreciable interval of time between the prior negligence of the plaintiff and the subsequent negligence of defendant. Where the negligence of both continues down to the moment of accident and contributes to the injury, the case is one of concurring negligence, and there can be no recovery.' "

██ It is only when some new active negligence on the defendant's part becomes the immediate and proximate cause of the accident that the rule applies. In such a case the antecedent negligence of the plaintiff becomes remote. *Barnes* v. *Ashworth,* 154 Va. 218, 153 S. E. 711.

██ It has no application "where the proximate and efficient cause of the accident involved the concurrent negligence of both plaintiff and defendant, unbroken by any efficient supervening cause and to such case the exception referred to obviously has no application." *Southern R. Co.* v. *Bailey,* 110 Va. 833, 67 S. E. 365, 369, 27 L. R. A. (N.S.) 379. This is a leading case in Virginia and deals with the history of the doctrine. Keith, P., said: "We are dealing here with a case where a plaintiff, who could, up to the moment of impact, have placed himself in a position of safety, if he had exercised ordinary care to discover the approaching train, is seeking to recover from the defendant company because, by the exercise of like care, it could have avoided inflicting the injury of which he complains; and the question is whether or not a plaintiff can recover of a defendant where they are equally guilty of the breach of an identical duty, the consequences of which continue on the part of both to the moment of the injury. Of course, before the doctrine of the last clear chance can be invoked, it must be shown that the defendant has been guilty of negligence, either before or after the discovery of the peril constituting the proximate cause of the accident." A recovery in that case was denied.

██ There is this exception to the rule which prevents a recovery where there is continued and concurring negligence. If, while these conditions exist, the defendant sees, or in the exercise of reasonable care should have seen, that plaintiff is oblivious of his danger or unable to extricate himself from a position of peril in which his negligence has placed him, then a reasonable effort should be made to avoid an accident. If the driver of a car saw some man whom he knew was blind, undertake to cross the street in front of him where he had no right to cross,

it would be the driver's duty to take all reasonable precautions, and he should not be permitted to say, "Though I was negligent, he too was concurringly negligent up to the moment of impact." In such a case the driver's negligence would be culpable and the latest in the succession of causes. *Roanoke Ry. Co.* v. *Carroll, supra; Barnes* v. *Ashworth, supra.*

Continued and concurring negligence is a complete defense unless there be some circumstances or superadded fact which would make reliance upon it inhuman and culpable. One cannot maim or injure another merely because he is negligent. It is only when these superadded facts or circumstances make the conduct of the defendant the proximate cause that the rule applies.

This doctrine is not intended to protect the interest of any special class of litigants. Plaintiffs and defendants each may invoke it. Their rights and obligations are the same.

"The foundation of the doctrine is that the parties are guilty of concurring negligence and there must be some condition, circumstance or superadded fact which one of the parties saw or by the exercise of ordinary care could have seen, that made it his duty to endeavor to avoid injury to the other negligent party, and the obligation of discovering the last clear chance is mutual." *Green* v. *Ruffin,* 141 Va. 628, 125 S. E. 742, 747, 127 S. E. 486. In that case it was also said: "Assuming that the plaintiff was negligent, it was her duty, with the automobile in plain view coming toward her, to have looked and stopped when such act would have been effective. She had the same last clear chance to protect herself as the defendant had to protect her, for the doctrine of the last clear chance is a duty imposed by law on both the plaintiff and defendant. If being in plain view of each other and with equal opportunity to prevent the accident, they are guilty of concurring negligence, there can be no recovery."

The statute which gives to the driver of the vehicle on the right, when approaching intersecting roads,

the right of way does not apply to railroads and street car companies. See Acts of 1926, ch. 474, pp. 763-766, defining vehicles. In the instant case both the street car and the automobile approached an intersection at undiminished speed. If the plaintiff did not see the street car it was because he failed to look. This was of course negligence and the situation is not changed if he did see it when it was just upon him and when a collision was inevitable. If the motorman saw the automobile proceeding in a manner which indicated a purpose to cross the intersection it was his duty to check his speed. His failure to take this precaution was negligence, and if he did not see the automobile, he should have seen it. We have here a simple case of concurring and continuing negligence up to the moment of the accident, in which the law gives no relief. There was no intervening cause.

If, without more, two automobiles, traveling upon intersecting highways, were to run into each other at the point of intersection, plainly there could be no recovery by either driver. The rights of each would have been equal and their negligence the same. The chance which each had to avoid the accident was common to both and of course to permit both of them to invoke the doctrine of the last clear chance would lead to impossible results.

After the court over an objection of the defendant had given an instruction offered by the plaintiff dealing with the last clear chance, the defendant sought to limit its force by an instruction on the same subject. This is not a case of invited error nor of waiver of the exception theretofore taken. *Green* v. *Ruffin, supra.*

For reasons stated, the judgment appealed from should be reversed and final judgment entered here for plaintiff in error.

*Reversed.*