## Staunton

### J. C. REMINE AND L. B. MEADE v. JENNIE B. WHITED.

September 9, 1942.

Record Nos. 2562, 2563.

Present, Holt, Hudgins, Gregory, Eggleston and Spratley, JJ.

The opinion states the case.

*S. B. Campbell, S. B. Campbell, Jr.,* and *George P. Young,* for the plaintiff in error, Remine.

*Joseph S. Gillespie* and *R. O. Crockett,* for the plaintiff in error, Meade.

*M. M. Long* and *Burns & Lively*, for the defendant in error.

HOLT, J., delivered the opinion of the court.

Plaintiff was injured in an automobile accident at about three-thirty in the afternoon of February 27, 1941.

The accident occurred in the town of Abingdon at the intersection of Valley street and Court street. Valley street runs east and west and Court street north and south. Valley street is an arterial street, is intersected by Court street at right angles and has a "Stop" sign on either side of this intersection. The paved portion of Valley street is 38 feet wide though the street itself, including sidewalks, grass plot, etc., is 68 feet wide. Court street, north of Valley street, is 50 feet wide with 23 feet of paved surface. Both of these streets, at and above the point of intersection, are straight and comparatively level.

J. C. Remine, alone in a Dodge sedan, was traveling east at a moderate rate of speed on his right-hand side of Valley street. L. B. Meade also drove a closed car and was going south on Court street, north of Valley street. His speed was moderate and with him rode Mrs. Jennie B. Whited, Mrs. Margaret Mauch, Mrs. Mary Whited, Mrs. Zeola Ball, Mrs. L. B. Meade and a grandchild of Mrs. Jennie B. Whited.

Plaintiff, Mrs. Jennie B. Whited, in a motion for judgment sought to recover damages from both Remine and Meade. She did prevail and was sustained in her contention both by the jury and by the court. These defendants, against both of whom judgment has gone, appealed to this court for relief and each was awarded a writ of error and supersedeas.

Remine was familiar with the streets of Abingdon. He said that it was snowing at the time of the accident and that his windshield was covered with snow except where the wiper had cleared it away. When about 150 feet from the intersection, he looked across to Court street and saw nothing. Afterwards he did not look again but looked straight ahead and never saw the Meade car until it was five or six feet away. He further said that he could at any time have stopped his car within 20 or 25 feet. After the collision

both Remine and Meade got out of their cars, and Meade said to Remine: "I didn't see you until you hit me—until after you hit me."

L. B. Meade, who was driving his own car, was not familiar with the streets of Abingdon. He, too, said that he was traveling at a moderate rate of speed, and he does not appear to have seen the Remine car at all until at or about the moment of the collision. There was a "Stop" sign at the entrance of Valley street and at it he stopped. Then, according to his evidence, for the first time he looked down Valley street and saw nothing, started across it and was struck. Both he and Remine got out of their cars. According to Remine's testimony, Meade then said: "I didn't see ou until you hit me—until after you hit me." And Meade's own testimony is this: "I didn't see the Remine car until his car collided with mine." Meade further said that it was not snowing and that visibility was good.

Garland K. Patton reached the point of accident about five minutes after it had occurred. He said that there was snow and sleet on the street and that the street was wet, but "I don't believe it was snowing at the time I made the investigation."

Mrs. Jennie B. Whited, the plaintiff, was "sitting on the right-hand side of the car in the rear seat facing the front" and about where her car was struck. She saw the Remine car coming down Valley street when it was about 250 feet from the intersection. It did not occur to her that there was any danger of a collision.

Both of these streets were straight and comparatively level, and there were no intervening obstacles which interfered with vision after the Remine car was sighted.

We have seen that there is testimony to the effect that neither Remine nor Meade saw each other until the moment of the collision. In all human probability it was under those conditions that they ran into each other.

Remine should have seen the Meade car when he was seen from it. There was nothing to interfere with vision across the angle of their approach.

■ When two automobiles, approaching each other at right angles on level ground, traveling slowly and under perfect control in daylight with visibility good, in plain sight of each other and with no intervening traffic, collide, we have a typical case of continuing and occurring negligence.

"If, without more, two automobiles, traveling upon intersecting highways, were to run into each other at the point of intersection, plainly there would be no recovery by either driver. The rights of each would have been equal and their negligence the same. The chance which each had to avoid the accident was common to both and of course to permit both of them to invoke the doctrine of the last clear chance would lead to impossible results." *Virginia Elec., etc., Co.* v. *Vellines*, 162 Va. 671, 175 S. E. 35. *Roanoke Ry., etc., Co.* v. *Carroll*, 112 Va. 598, 72 S. E. 125; *Green* v. *Ruffin*, 141 Va. 628, 125 S. E. 742, 127 S. E. 486.

It is said that Remine, being on an arterial street, had the right of way. This is the statute:

"Sec. 2154(123) Right of way.—(a) When two vehicles approach or enter an intersection at approximately the same time, the driver of the vehicle on the left shall yield the right of way to the vehicle on the right, except as otherwise provided in section 2154(125). The driver of any vehicle traveling at an unlawful speed shall forfeit any right of way which he might otherwise have hereunder.

"(b) The driver of a vehicle approaching but not having entered an intersection shall yield the right of way to a vehicle within such intersection and turning therein to the left across the line of travel of such first mentioned vehicle, provided the driver of the vehicle turning left has given a plainly visible signal or intention to turn left as required in section 2154(122)."

■ Remine was going 20 miles an hour. Meade, starting from a stop, must have been going much slower, and yet he had practically crossed Valley street before he was struck. That he had entered the street before Remine reached Court street is fairly clear.

■ "One entitled to priority under the law is nevertheless required to keep a lookout for cars approaching from his left; and, if he fails in this respect, he may be charged with negligence." Huddy on Automobiles (6th Ed.), section 394. See also *Johnson* v. *Harrison*, 161 Va. 804, 172 S. E. 259, and authorities there cited.

■ Indeed, all of the cases hold that this statutory right of way is one to be exercised with prudence and with due regard for the rights of others.

We might approach this case from another angle. Suppose that Remine had been hurt and had sought to recover compensation from Meade. A jury might have believed Meade, who said that Remine told him that he did not see him at all until the moment of collision. They must have believed that with any sort of care Remine could have seen Meade in time to have avoided an accident.. In these circumstances the court could not have disturbed a verdict for the defendant based upon contributory negligence.

Let us look at Meade's situation:

■ It is true that the plaintiff was his guest. If passengers in his car saw the Remine car, he should have seen it. Apparently he did not look. He did stop at the "Stop" sign and said he then looked. Manifestly he did not, or if he did he saw the Remine car coming. In the light of this situation, with a car full of women and children and without further precaution, he started across Valley street. His negligence was gross.

Remine and Meade are joint defendants. In the notice of motion is this charge:

"The said L. B. Meade was guilty of gross negligence which proximately caused and contributed to plaintiff's injury in running and operating his automobile at a fast and dangerous rate of speed; in failing to bring his said automobile to a complete stop before entering said intersection * * *"

■ If we were to concede that plaintiff could not prove against Meade a different state of facts, Meade had the right to disapprove them, and did. The collateral effect of such disproof as to a joint tortfeasor is one of those things which

does sometimes happen. But the mind of a jury is not made up of water-proof compartments. It was not called upon to inquire and did not ask "in what capacity are we to receive such information." But with this evidence entirely excluded, it is, as we have seen, plain that Remine approached the intersection without looking, and he was negligent upon his own statement of what he did.

Upon its merits, the plaintiff has made out a case against both of these defendants.

■ It is said that she was guilty of contributory negligence. She saw the Remine car when it was 250 feet from the intersection. She had every reason to believe that Meade saw it also. Both cars were traveling at a moderate rate of speed, doubtless due to road conditions. Meade did actually stop just before entering Valley street. She had every right to believe that this was, in part, due to the fact that he saw the Remine car coming. There was no occasion for her to do anything. Her responsibilities as a back-seat driver were at an end.

Conditions under which, in such circumstances, a defense of contributory negligence can be sustained have been frequently stated and restated by this court and have been well phrased by Mr. Justice Hudgins in *Linton* v. *Virginia Elec., etc., Co.,* 162 Va. 711, 174 S. E. 667, where he said:

■ "When a person has observed a dangerous situation of which the driver is apparently unconscious, it is his duty, if he is so situated that he can readily do so, to call the driver's attention to it; and, if he fails to do so and is injured as a result of such failure, he is guilty of negligence."

When the jury first came into court it brought with it this verdict:

"We, the jury, find for the plaintiff and assess her damages at $5,000.00 against L. B. Meade. John H. Bundy, Foreman."

"We, the jury, find for the plaintiff and assess her damages at $5,000.00 against J. C. Remine. John H. Bundy, Foreman."

Then this occurred:

"By Judge Lively:
   I think the court ought to amend the verdict.
By The Court:
   Did you mean to find both defendants liable?
By The Jury:
   Yes, sir."

\*       \*       \*       \*       \*       \*       \*       \*       \*

"By the Court:
   Do you mean the woman is to recover $5,000.00 or $10,000.00?
By The Jury:
   $10,000.00
By The Court:
   You want to return a verdict for $10,000.00?
By The Jury:
   Yes, sir."

\*       \*       \*       \*       \*       \*       \*       \*       \*

"By The Court:
   I think you better go back and find a verdict in this form, 'We, the jury, find for the plaintiff against both defendants and assess her damages in the sum of $10,000.00'—if that is what you want to do.

By The Jury:
   That is right. That is what we want."

The jury went back to its rooms and sundry objections were interposed. It came back and the following proceedings were had in their presence:

"By The Court:
   Just let me have the verdict.

   NOTE: The Foreman handed the verdict to the Court.

By The Court:
   Now you gentlemen step back in the room there.

   WHEREUPON, the jury again returned to its room and the following proceedings were had in their absence:

By The Court:

(Continuing.)—as follows: 'We, the jury, find for the plaintiff against L. B. Meade, and assess her damages at the sum of $5,000. John H. Bundy, Foreman.'

'We, the jury, find for the plaintiff against the defendant J. C. Remine, and assess her damages at the sum of $5,000. John H. Bundy, Foreman.'

The court did not receive the verdict at the hands of the jury, but thereupon enquired of the jury whether or not they found both defendants guilty of negligence, and whether or not it was their intention and purpose to fix her damages at $5,000 in gross or $10,000, and the jury responded—
By Mr. Crockett:

Was it the jury or the foreman, your Honor?
By The Court:

All right, they were all present. (Continuing).—that it was their intention to find both defendants guilty of negligence and to fix the gross sum of damages at $10,000.

Thereupon the court, refusing to receive the verdict, instructed the jury to return to their room and find a joint judgment of joint liability.

That is about all that has happened, isn't it?

\*       \*       \*       \*       \*       \*       \*       \*       \*

By The Court:

Thereupon the court instructed the jury to return to their room and find a joint verdict, and the jury was accordingly under the direction of the court, returned to their room to consider of their verdict under the instructions of the court."

The jury again came into court, which said to them:

"Gentlemen of the jury, in view of certain preliminary motions that have been made in your absence, I wish to instruct you to return to your room and render such verdict as in your judgment is proper in this case—such verdict as in your judgment is right and proper in this case, but the court does instruct the jury that if they reach the conclusion that both

of these defendants have been guilty of negligence which contributed to the plaintiff's injury, that you will find a judgment against both defendants and assess such damages as you think is proper and right under the law."

\* \* \* \* \* \* \* \* \*

" \* \* \* go back and fix that verdict jointly or severally, however you want it."

They did and then brought in this verdict:

"We the jury find for the plaintiff and assess her damages at $5,000 against each defendant. John H. Bundy, Foreman."

The court again said:

"I am not going to discharge them. Gentlemen of the Jury, the question we want to settle here primarily is the form of the verdict you brought in. Do you mean to assess this woman's damages, the plaintiff's damages at $10,000?

By The Foreman:
    That is right.
By The Court:
    That is what you all want to give her?
By The Jury:
    Yes, sir.
By The Court:
    You all agree on that?
By The Jury:
    Yes, sir.
By The Court:
    The court instructs the jury that if that is the amount of damages that you want to award this plaintiff against both of these defendants, that it will be proper for you to put it in this form: 'We, the jury, find for the plaintiff against both defendants, and assess her damages at the sum of $10,000'— which is the same thing. That is what we are trying to get at. We are trying to avoid a split verdict here. That is what we want. Do you understand what I am getting at?

By A Juror:
    That is what we were trying to write in the other verdict, your Honor.
By The Court:
    Let me write the verdict.
*      *      *      *      *      *      *      *      *
By The Court:
    'We the jury find for the plaintiff against both the defendants J. C. Remine and L. B. Meade, and assess her damages at the sum of $10,000.'  Is that your verdict?

By The Foreman:
    Yes, your Honor.
By The Court:
    So say you all?
By The Jury:
    Yes, sir."

In final form the verdict read:

"We, the jury, find for the plaintiff against both the defendants J. C. Remine and L. B. Meade, and assess her damages at the sum of $10,000.  John H. Bundy, Foreman."

This then occurred:

"By The Court:
    Gentlemen, is that your verdict?
By The Foreman:
    Yes, sir.
By The Court:
    So say you all?
By The Jury:
    Yes, sir."

Incidents in jury trials come hot and hurrying.  From unanticipated sources new problems spring and must be solved without delay.  Judges cannot take time off to ponder.  These primary purposes are ever before them:  All litigants are en-

titled to one fair trial and to no more; justice must be done and settled rules of law and procedure must be obeyed. If errors beyond those warranted new trials, litigation would be unending, for, as we have more than once said, there is no such thing as a perfect trial. Cases sometimes won after long delays might as well never have been won at all.

It is clear that here the jury intended to give the plaintiff $10,000. It was their opinion that both defendants were negligent and therefore they thought it fair that the burden of their verdict should be borne equally by them. That was impossible, and so the presiding judge did what the jury really wanted him to do—he gave to the plaintiff $10,000 and left the defendants to divide that burden between themselves.

█ We find these statements of the law applicable to a case like this:

" * * *there are numerous cases to the effect that the court has the power to put a manifestly irregular or defective verdict in such form as to make it conform to the intention of the jury, and carry their findings in to effect, where the intention can be ascertained with certainty, from statements of the jurors themselves * * * or any other clear and satisfactory evidence appearing in the record or the minutes of the trial." 64 C. J. pgs. 1094-1096.

█ In *Manor* v. *Hindman*, 123 Va. 767, 97 S. E. 332, it is said:

"It is the duty of the trial courts to require the verdicts of juries to be put in approved form in order to effectuate their true intent and meaning."

█ The court did what it should have done. It put the verdict in proper form; otherwise there would have been a mistrial, when, as we have seen, the jury wished to give to this plaintiff $10,000.

█ █ It is said that the verdict is excessive. This woman was badly hurt. Within wide limits it is for the jury to say what is just compensation, and their verdict cannot be set aside unless it be one that shocks the conscience.

We have not undertaken to discuss in detail all of the assignments of error. There are twenty-eight of them and

twenty-five instructions. We have examined all of them with care. The jury was fairly instructed and in none of these many assignments do we find reversible error. These defendants, upon their own statement of their own case, with all else aside, are guilty of negligence.

The judgment of the trial court should be affirmed, and it is so ordered.

*Affirmed.*