## 𝔎𝔦𝔠𝔥𝔪𝔬𝔫𝔡.

## NORFOLK SOUTHERN RAILROAD COMPANY V. SMITH.

### January 24, 1918.

1. PLEADING—*Declaration—Sufficiency.*—Under the Virginia statute, Code 1904, section 3272, a declaration is not demurrable unless something so essential to the action is omitted that judgment according to the law and the very right of the case cannot be given. In the case at bar, an action for damages for personal injuries sustained at a railroad crossing, the four counts in the declaration gave the date and place of the accident, and such particulars thereof as plainly informed the company of every fact relied on by the plaintiff, which was essential to enable it to make its defense. The company was charged with negligence in several particulars, and with failure to exercise ordinary care to avoid the accident after, by the exercise of such care, it should have seen the plaintiff's danger. This was sufficient, and the court below properly overruled the demurrer.

2. CONTRIBUTORY NEGLIGENCE—*Presumptions and Burden of Proof.*— In an action for personal injuries sustained at a grade crossing, the court instructed the jury that the burden of proving contributory negligence was upon the defendant. This was erroneous, as the instruction should have concluded, "unless such contributory negligence was disclosed by the plaintiff's evidence, or could fairly be inferred from the circumstances," or with language of similar import.

3. NEGLIGENCE—*Contributory Negligence—Last Clear Chance.*—The underlying principle of the doctrine of the "last clear chance" is, that notwithstanding the contributory negligence of the plaintiff, there is something in his condition or situation at the time of the injury to admonish the defendant that he is not able to protect himself. The doctrine is one of prior and subsequent negligence, or of remote and proximate cause, and presupposes the intervention of an appreciable interval of time between the prior negligence of the plaintiff and the subsequent negligence of the defendant. Where the negligence of both continues down to the moment of the accident and contributes to the injury, the case is one of concurring negligence, and there can be no recovery.

4. NEGLIGENCE—*Contributory Negligence—Last Clear Chance—Instructions.*—In an action for personal injuries sustained at a grade crossing, where plaintiff drove his automobile upon the track from fifty to seventy-five feet in front of an approaching train, the refusal to give, at the request of the defendant, the following instruction, was error: "The court instructs the jury that the law recognizes the fact that the nerves and muscles of men are not so co-ordinated that there can be instantaneous action to meet an emergency, and if you believe from the evidence the plaintiff's automobile was suddenly stopped on the track, you cannot find for the plaintiff unless you believe that the plaintiff has proved by the preponderance of the evidence that in contemplation of the entire situation after the danger became known to the motorman or ought to have been discovered by him, by the exercise of ordinary care, he, the motorman, negligently failed to do something which he had a last clear chance to do to avoid the accident."

5. CROSSINGS—*Last Clear Chance.*—In an action for personal injuries sustained in an accident at a crossing, it appeared that the plaintiff drove his automobile upon the track of defendant about fifty or seventy-five feet before an approaching train and that plaintiff might have seen one hundred yards or more along the track after he passed a store which, until he was within twenty or more feet of the track, obstructed his view. Plaintiff testified that he never saw the train that struck him. The automobile could have easily been stopped at the speed at which it was going within seven or eight feet. It was demonstrated that the train could not have been moving rapidly at the time of the accident.

*Held:* That, under such circumstances as these, the doctrine of the last clear chance can have no application whatever. The proximate cause of the accident was the negligence of the plaintiff in failing to observe the approaching train, in failing to stop his car before reaching the railroad track, and in stopping it thereon almost immediately before the accident.

Error to a judgment of the Circuit Court of Princess Anne county, in an action of trespass on the case. Judgment for plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*James G. Martin,* for the plaintiff in error.

*R. R. Hicks* and *W. R. L. Taylor,* for the defendant in error.

PRENTIS, J., delivered the opinion of the court.

The plaintiff in error, hereinafter called the company, complains of a final judgment in favor of the defendant in error, hereinafter called the plaintiff, because of an injury caused by the collision of a train of the company, consisting of three electrically operated cars, with an automobile operated by him, at a road crossing in Princess Anne county. There were two trials, the court having, upon motion of the company, set aside the first verdict in favor of the plaintiff, but refused to set aside the verdict against the company upon the second trial, and entered judgment thereon.

The first error assigned is the overruling of the demurrer to the declaration and to each count thereof. It is sufficient to say, as to this, that under the Virginia statute, Code, section 3272, a declaration is not demurrable unless something so essential to the action is omitted that judgment according to the law and the very right of the case cannot be given. In this case, each of the four counts in the declaration gives the date and place of the accident, and such particulars thereof as plainly informed the company of every fact relied on by the plaintiff, which was essential to enable it to make its defense. The company is charged with negligence in several particulars, and with failure to exercise ordinary care to avoid the accident after, by the exercise of such care, it should have seen the plaintiff's danger. This is sufficient, and the court properly overruled the demurrer.

Another error assigned is the granting, upon the motion of the plaintiff, of instructions "A" and "B."

Instruction "A" reads thus: "The court instructs the jury that even though they may believe from the evidence that the plaintiff was guilty of contributory negligence, yet if they further believe from the evidence that the defendant company knew of the plaintiff's danger or by the exercise of ordinary care should have known of the plaintiff's danger in time to have stopped its train and avoided the accident, it was its duty to do so and if they believe from the evidence that the said defendant company failed to exercise this duty and that such failure was the proximate cause of the injury, it is liable and your verdict should be for the plaintiff."

An instruction in this precise language was condemned in the opinion of this court in *Norfolk Southern Railroad Co.* v. *Whitehead,* 121 Va. 139, 92 S. E. 916. In that case it was determined to be harmless error.

Instruction "B" reads thus: "The court instructs the jury that the burden of proving contributory negligence is upon the defendant."

Such an instruction has been condemned in several cases in Virginia, it should have concluded thus: "unless such contributory negligence was disclosed by the plaintiff's evidence, or could fairly be inferred from the circumstances," or with language of similar import. *Kimball & Fink* v. *Friend,* 95 Va. 125, 27 S. E. 901; *Southern Ry. Co.* v. *Bruce,* 97 Va. 92, 33 S. E. 548; *Southern Ry. Co.* v. *Mason,* 119 Va. 262, 89 S. E. 225.

The refusal of the court to grant instruction "Z," at the request of the company, is assigned as error. This instruction reads: "The court instructs the jury that the law recognizes the fact that the nerves and muscles of men are not so co-ordinated that there can be instantaneous action to meet an emergency, and if you believe from the evidence the

39

plaintiff's automobile was suddenly stopped on the track, you cannot find for the plaintiff unless you believe that the plaintiff has proved by the preponderance of the evidence that in contemplation of the entire situation after the danger became known to the motorman or ought to have been discovered by him, by the exercise of ordinary care, he, the motorman, negligently failed to do something which he had a last clear chance to do to avoid the accident."

This instruction should have been given in this case. It was peculiarly appropriate in view of the evidence to be hereinafter referred to, and the failure to give it was prejudicial error.

The doctrine of the last clear chance has nowhere been better stated than in the syllabus to the case of *Roanoke Ry. & Elec. Co.* v. *Carroll,* 112 Va. 598, 72 S. E. 125, thus: "The underlying principle of the doctrine of the 'last clear chance,' as declared by the decisions of this court, is, that notwithstanding the contributory negligence of the plaintiff, there is something in his condition or situation at the time of the injury to admonish the defendant that he is not able to protect himself. The doctrine is one of prior and subsequent negligence, or of remote and proximate cause, and presupposes the intervention of an appreciable interval of time between the prior negligence of the plaintiff and the subsequent negligence of the defendant. Where the negligence of both continues down to the moment of the accident and contributes to the injury, the case is one of concurring negligence, and there can be no recovery."

And again, in *Real Estate Trust & Ins. Co., Inc.* v. *Gwyn's Adm'x,* 113 Va. 337, 74 S. E. 208: "In order that the doctrine of the 'last clear chance' may apply, it must appear that, in contemplation of the entire situation after the danger of the plaintiff became known to the defendant, or ought to have been discovered by him by the exercise of ordinary care, he negligently failed to do something which

he had a clear chance to do to avoid the accident. But the doctrine can have no application to a case where the negligence of both plaintiff and defendant is simultaneous and concurrent."

And in *Norfolk Southern R. Co.* v. *White's Adm'x,* 117 Va. 342, 84 S. E. 646, it is said: "The doctrine has no application where * * * the negligence of the plaintiff's intestate and that of the defendant, if there was any such, were so closely connected in point of time as not to have afforded the employees of the defendant a plain opportunity to avoid inflicting the injury for which the action is brought."

The instruction complained of, in its statement of the fact that the nerves and muscles of men are not so co-ordinated that there can be instantaneous action to meet an emergency, is based upon an expression in the opinion of Keith, P., in the last-named case; and in cases like this where the evidence justifies calling the attention of the jury to this truth, it is proper to give an instruction to the effect that there must be an appreciable interval of time between the moment in which the person charged with negligence should, in the exercise of proper care, have seen and apprehended the impending danger, and thereafter, in the exercise of such care, have sufficient time in which to take such action as will avoid the accident. Under the facts of this case, the instruction was manifestly proper. *Southern Ry. Co.* v. *Mason, supra; Wash. & Old Dom. Ry.* v. *Ward,* 119 Va. 334, 89 S. E. 140.

After verdict the company moved the court to set it aside as contrary to the law and the evidence, and this motion should have been sustained.

These facts appear from the evidence of the plaintiff and his witnesses: That he might have seen one hundred yards or more along the track after he passed the store which,

until he was within twenty or more feet of the track, obstructed his view.    His description of the accident is this: "As I was coming up from Norfolk way; going down to the Beach, coming looking, and I didn't hear no whistle blown, and didn't see no car, and when I got to the railroad, Mr. Gimbert's store blocks it so you can't see nothing until right on the railroad, and when I got to the railroad there were three negroes on the track, and I run up there and had to stop my machine, and blew my horn before I got there, and when I blew my horn two of the negroes got out of the way, and the other one stood there, and I don't remember anything else."    He further says that he did not know what struck him until the next day.    The plaintiff's wife, sitting next to him in the automobile, says that when the automobile was about three feet from the track she looked up and saw the car coming about seventy-five feet away, and there was a rise about two feet up on the track which cut their speed off, and when they got on the track they stopped right on it; that the train was coming just as fast as it could, that it didn't have any check at all, and she judged it was sixty or seventy-five feet away; that she was struck dumb she supposed; and that she did not have power to move or say anything. Charles Wood, another witness for the plaintiff, riding on the back seat of the automobile, says he saw the train just before he got to the track, but didn't say anything, and that to the best of his knowledge the train was about fifty feet off; that the train was very close.    The plaintiff also says that after he looked each way and got near to the track he saw the men there when too late, even if he had seen the train.    He says he didn't see the train.    This statement of his that he did not see the train can only be explained by the fact that he did not look, because there was nothing to obstruct his vision after he passed Gimbert's store, which no one locates closer to the track than twenty

feet, and which the evidence fairly shows was twenty-eight feet eight inches from the nearest rail of the railroad track, while the automobile could have been easily stopped at the speed at which it was going within seven or eight feet. The plaintiff repeats his statement that he never did see the train, and did not know what struck him until the next day. The train was stopped at the station about fifty feet away from the point of the collision, and it clearly appears that its speed had been slackened in order to stop at the station. Land, another witness for the plaintiff, says that if the automobile, instead of stopping, had continued to move, it might have gotten across, though "it would have been a close shave, but he might have made it." The witness chiefly relied upon to sustain the recovery is Trunnell, who had been a motorman on the Norfolk Southern. He says the train was going very slowly, and that he judged it could have been stopped in about twenty or thirty feet. He also says that even after the emergency brake had been put on, the train might slide one or two car lengths and sometimes more. On the first trial this witness had testified that the train could have been stopped in from twenty-eight to thirty feet.

The physical facts are, that although there were five occupants of the automobile, two of whom were children eleven and seven years of age, respectively, only the plaintiff, who was driving, was hurt; that after it was struck its engine continued to run, and described a semicircle, and after the collision was making its way back towards the train when Mrs. Smith, the plaintiff's wife, stopped the engine. These facts demonstrate that the train could not have been moving rapidly at the time of the impact. Under such circumstances as these, the doctrine of the last clear chance can have no application whatever. The proximate cause of the accident was the negligence of the plaintiff in failing to observe the approaching train, in fail-

ing to stop his car before reaching the railroad track, and in stopping it thereon almost immediately before the accident.

The verdict will be set aside, the judgment reversed, and the case remanded for a new trial, if the plaintiff shall be so advised.

*Reversed.*