# Wytheville

VIRGINIA ELECTRIC AND POWER COMPANY AND W. R. BLANTON
v. LULA AGNES FORD, ADM'X, ETC.

June 11, 1936.

Present, All the Justices.

The opinion states the case.

*T. Justin Moore, Archibald G. Robertson* and *Richard H. Mann,* for the plaintiffs in error.

*Aubrey R. Bowles, Jr., Willis D. Miller* and *A. Scott Anderson,* for the defendant in error.

CAMPBELL, C. J.,* delivered the opinion of the court.

This writ of error brings under review a judgment obtained by defendant in error against the plaintiff in error. The basis of the action is the alleged negligence of the defendant which resulted in the death of plaintiff's intestate.

The facts displayed by the record are as follows:

Between Richmond and Petersburg runs an interurban electric railway over which trolley cars are operated. From Richmond south for some distance the car track runs between two paved concrete highways. That to the west carries southbound traffic, that to the east northbound. These paved highways are each eighteen feet wide, and are thirty-four feet apart. From the eastern

---

*Due to circumstances over which we had no control, it was necessary to re-assign the writing of this opinion. This accounts for the delay in the decision.

edge of the western driveway to the west rail of the street car track is thirteen and eight-tenths feet. The track itself is four and seven-tenths feet wide, and from the eastern rail of the car track to the western edge of the eastern highway is sixteen and six-tenths feet. On each side of the car track is a shallow depression or drain. The track itself is somewhat higher than the paved road. An engineer whose plat is in evidence said that it was from four to six inches higher. Another witness puts it at two feet. For the purposes of this case we will deal with these roadways and this track as being straight for an indefinite distance and practically level, although there is a slight grade to the south at the point of collision.

South of Richmond's corporate limits there is a modern suburban development, streets and alleys are laid out, among them Converse street. In this territory Ford operated a dairy truck for the Zeller Dairy Company. He solicited business, sold and delivered milk, made collections, and was therefore intimately familiar with roads there, with traffic conditions and with this electric line and the manner in which its cars ran.

Petersburg and Richmond are about twenty-two miles apart. These electric cars were scheduled to make this trip in fifty-eight minutes and served fifty-six stops, although there were no pauses at them unless passengers were to be taken on or let off. In other words, these electric cars in order to keep this schedule must move rapidly, all of which Ford knew.

On the morning of February 27, 1933, he, driving his milk truck and accompanied by a co-employee, Driscoll, came down the west road, made a wide turn and started across the car track at Converse street. As he started to cross, and from then on, his truck was practically at right angles with the car track. He sat in the driver's seat, which was on the left side. By his seat was an ordinary truck door with its window down. That is to say, he sat on the side from which the electric car was coming, with an unobstructed view.

This truck is eighteen feet long. As the turn was made it was shifted into low gear, which, under ordinary conditions, gave it a speed of from three to five miles an hour. Mr. Zeller said there was still a lower gear; "the lowest gear is never used unless they have two or three tons on them on heavy duty work." Mr. Driscoll, who as we have seen, was in the truck and therefore an eye witness, said that it "might have been going as much as ten; maybe six. It is hard to tell." Again he said that it "was inching along, trying to look for an opening to get across." Mr. J. B. Bradshaw, another witness for the plaintiff, and the only other eye witness, said:

"Well, he came upon the track real slow. It is a little rise there on that crossing and he was heavily loaded, I reckon, with milk bottles and crates, and came upon the driveway slow and he pulled off on the side of the tracks so that his front wheels were off the tracks and his rear part of his truck was on the track and he hesitated there, stopped there."

Mr. Driscoll tells us why Ford was "inching along." There were several cars coming up from the south, "one trying to pass another at a rapid rate of speed there, running abreast along there." This situation made it necessary for Ford either to drive slowly or stop, otherwise he might have run into one of these northbound cars. Driscoll said that when they made the turn and straightened out for the Converse street crossing, he and Ford both looked to the north and saw the trolley car approaching about 670 feet away. When they looked again it was near the next street to the north, which street was 335 feet away, and when they looked for the third time the car was about fifty feet away and approaching at undiminished speed. The evidence of the plaintiff is that it was running between forty and forty-five miles an hour, which was in excess of scheduled speed, but that speed, as we have seen, was high at all times between stations. Ford knew that the car was coming and he knew that the way ahead was blocked, and yet he continued in his seat until

his truck was struck and he was killed. Driscoll said that before the impact, the truck's front wheels had about reached the concrete on the north road. If that be true, all but about a foot and a half of the truck's body had cleared the car track, but photographs in evidence make it fairly plain that the trolley car struck the truck just to the rear of the driver's seat. It then ran on about twenty or twenty-five steps, taking the truck with it. Zeller, who went to salvage the truck, said that "the rear part of the truck and the rear left wheel was under the car," and again, "the street car was resting on top of the truck and pushing the truck and hub down against the rail." These physical facts show that the body of the truck at the moment of impact stood practically squarely across the car track. It also appears from plaintiff's evidence that there was sand on the track for thirty feet north of the crossing, which appeared to have been "burnt" by locked and skidding wheels.

There was a special jury and a verdict for the plaintiff which was carried into a judgment of confirmation by the trial court. The effect of this we have considered in many cases. We must accept the conclusions reached in the trial court, unless they are plainly wrong or without evidence to support them. If they are plainly wrong, then plainly they should not be accepted. The duty which rests upon us is no less imperative in one case than in the other.

In this connection it should be remembered that even on a demurrer to evidence we look to the entire testimony of the witness and not to some isolated statement. If this were not true, a plaintiff might recover on testimony in chief, although on cross-examination he admitted that he was in error.

The negligence of the defendant for the purpose of this opinion must be assumed. This brings us back to Ford and to what he saw and did. It is not negligence as a matter of law to undertake to cross a track in front of an oncoming car then 670 feet away. To make it so, there

must be some super-added fact or facts. Ford knew the manner in which these interurban cars operated and must have had a fairly accurate knowledge of their schedule or of the manner in which they ran. As he started across the track he saw, or should have seen, that the crossing would in all probability be blocked by approaching cars going north on the other side, and that he would either have to stop or "inch along" to avoid them. Plainly, in such circumstances it was negligence for him to go onto the car track.

It is true, as contended, that men confronted by sudden emergencies are not required to follow the safest course. The doctrine of error *in extremis* is a humane one and has been frequently applied by this court, but it cannot be invoked by one who is at fault and whose negligence or misconduct brings about the peril in which he is placed.

In *Virginia & S. W. R. Co.* v. *Hill,* 119 Va. 837, 89 S. E. 895, 896, the court said:

"Plaintiff, moreover, invokes the doctrine of 'error *in extremis*' to escape the effect of his own negligence, but that principle does not apply to a self-imposed emergency. The doctrine pre-supposes that the party who invokes it is himself free from fault in creating the emergency." *Real Estate, etc., Ins. Co.* v. *Gwyn's Adm'x,* 113 Va. 337, 74 S. E. 208; *Lavenstein* v. *Maile,* 146 Va. 789, 132 S. E. 844; *Safety Motor Transit Corp.* v. *Cunningham,* 161 Va. 356, 171 S. E. 432.

When Ford started across this railway track he saw, or should have seen that progress might be stayed by oncoming northbound traffic on the far side.

It is true that the duty to look and listen is not applied with strictness to travelers crossing street railways.

" 'The look and listen rule is not applied with strictness to travelers crossing street railway tracks. But a person about to cross or go upon a street car track must use ordinary care in view of all the circumstances and sur-

roundings. He must make reasonable use of his eyes and ears to note the approach of cars, and where there is nothing to obstruct his view or distract his attention and he goes upon the track immediately in front of a moving car he is guilty of negligence. He should look for approaching cars at a place and time when such looking will be effectual.' 8 Thomp. on Neg. (White's Supp. 1914), section 1438." *Virginia Ry. & Power Co.* v. *Boltz,* 122 Va. 649, 95 S. E. 467, 468.

But even in such a case they are not relieved from the consequences of failure to take reasonable precaution for their own protection. *Stephen Putney Shoe Co.* v. *Ormsby's Adm'r,* 129 Va. 297, 105 S. E. 563; *Meade* v. *Saunders,* 151 Va. 636, 144 S. E. 711.

Where, however, the railway is not being operated upon a city street but upon its own right-of-way and across the country, it makes little difference whether the power used be steam or electricity. *Washington & O. D. Ry. Co.* v. *Zell's Adm'r,* 118 Va. 755, 88 S. E. 309; *Washington, etc., Ry.* v. *Thompson,* 136 Va. 597, 118 S. E. 76.

Moreover, in this case we are not dealing with a failure to look and listen, for it plainly appears that Ford actually saw the car which struck him when it was 670 feet away.

The plaintiff contends that Ford was not negligent. In addition, she contends that even if negligence be conceded, her judgment should be sustained upon the doctrine of the last clear chance.

In the leading case of *Southern R. Co.* v. *Bailey,* 110 Va. 833, 67 S. E. 365, 369, 27 L. R. A. (N. S.) 379, it was said that "* * * where the proximate and efficient cause of the accident involved the concurrent negligence of both plaintiff and defendant, unbroken by any efficient supervening cause, * * * to such case the exception referred to obviously has no application," and that this was a fundamental rule.

Where the negligence of both continues down to the moment of the accident and contributes to the injury, the

case is one of concurring negligence, and there can be no recovery. Michie's Digest, vol. 7, p. 667, citing many cases; *Green* v. *Ruffin,* 141 Va. 628, 125 S. E. 742, 127 S. E. 486.

"Continued and concurring negligence is a complete defense unless there be some circumstances or super-added fact which would make reliance upon it inhuman and culpable. One cannot maim or injure another merely because he is negligent. It is only when these superadded facts or circumstances make the conduct of the defendant the proximate cause that the rule applies." *Virginia Electric & Power Co.* v. *Vellines,* 162 Va. 671, 175 S. E. 35, 40. This doctrine has been frequently dealt with by this court. It is unnecessary to attempt to amplify it.

In *Norfolk Southern Ry. Co.* v. *Smith,* 122 Va. 302, 94 S. E. 789, 790, Judge Prentis said: "The doctrine of the last clear chance has nowhere been better stated than in the syllabus to the case of *Roanoke Ry. & Electric Co.* v. *Carroll,* 112 Va. 598, 72 S. E. 125, thus: 'The underlying principle of the doctrine of the "last clear chance," as declared by the decisions of this court, is that, notwithstanding the contributory negligence of the plaintiff, there is something in his condition or situation at the time of the injury to admonish the defendant that he is not able to protect himself. The doctrine is one of prior and subsequent negligence, or of remote and proximate cause, and presupposes the intervention of an appreciable interval of time between the prior negligence of the plaintiff and the subsequent negligence of defendant. Where the negligence of both continues down to the moment of the accident and contributes to the injury, the case is one of concurring negligence, and there can be no recovery.' "

This statement was re-affirmed and approved by Justice Eggleston in the recent case of *Frazier* v. *Stout,* 165 Va. 68, 181 S. E. 377.

Before this doctrine can be applied, plaintiff must show by a preponderance of the evidence that at some particular time the motorman, in the exercise of ordinary

care, saw, or should have seen, that Ford was oblivious to his danger or unable to extricate himself from a position of peril in which his negligence had placed him. *Frazier* v. *Stout, supra; Paytes* v. *Davis,* 156 Va. 229, 157 S. E. 557; *Barnes* v. *Ashworth,* 154 Va. 218, 153 S. E. 711.

The motorman was warranted in assuming that Ford would continue across the railway track. He could not be charged with knowledge that his failure to do this was due to distant but approaching traffic below the crossing. The evidence discloses that when it became evident that Ford was not going forward, he did apply his brakes.

The doctrine of the last clear chance applies with equal force to plaintiff and defendant. Their rights and obligations are the same. *Virginia Electric & Power Co.* v. *Vellines, supra; Green* v. *Ruffin, supra; McNamara* v. *Rainey Luggage Corporation,* 139 Va. 197, 123 S. E. 515. Plainly it can not be successfully invoked by both parties to one accident.

It is never intended that the doctrine of the last clear chance should wipe away or supersede the defense of contributory negligence, or of continuing and concurring negligence. *Frazier* v. *Stout, supra.* In this case and the case of *Driscoll* v. *Virginia Electric & Power Co.,* ante, p. 538, 181 S. E. 402, we have recently given to the matters here involved careful consideration.

Plaintiff cannot recover for another reason. Ford saw that he could not go forward and so he either came to a full stop or was "inching along." He knew that this rapid moving electric car was bearing down upon him, for it was in plain view. He had time in which to remove himself to a place of safety, and yet for some unknown reason he remained in the driver's seat until he was killed.

The case of *Dick* v. *Virginia Electric & Power Co.,* 158 Va. 77, 163 S. E. 75, 76, is very much in point. There the plaintiff undertook to drive across a street car track but slowed down because of traffic on the far side, when her car stalled on the track. She knew that a street car was approaching and yet "she sat in her automobile alter-

nately trying to get it started and watching the oncoming car until it struck her automobile and the injuries of which she complains were inflicted." She had time to get out and save herself. This she did not undertake to do, but relied upon the motorman to relieve her from the peril occasioned by her negligence. The court, quoting from *Virginia & Southwestern Ry. Co.* v. *Skinner,* 119 Va. 843, 89 S. E. 887, 888, said:

"No one can be allowed to shut his eyes to danger in blind reliance upon the unaided care of another without assuming the consequences of the omission of such care."

It was held that that was a case of continuing and concurring negligence. The right to recover was denied.

 In our opinion the doctrine of the last clear chance does not apply. Our conclusion is that Ford was negligent in driving upon the railway track, and he was negligent in remaining in his truck until killed.

For reasons stated, we are of opinion that the judgment appealed from should be reversed, and final judgment entered for the defendants.

*Reversed.*

HUDGINS, GREGORY and CHINN, JJ., dissenting.

HUDGINS, J., dissenting:

The error, as I see it, in the majority opinion lies partly in the fact that it deals with the case as if defendant were operating a steam railroad through a rural community. The defendant operates a trolley car on the public highway, with the consent of the proper authorities.*

---

*"This Agreement, Made this 25th day of September, 1929, by and between the Commonwealth of Virginia, acting by and through the State Highway Commissioner, party of the first part, and the Virginia Electric and Power Company, a corporation duly organized and doing business under the laws of the State of Virginia, party of the second part.

"Whereas, the Board of Supervisors of Chesterfield County, Virginia, by resolution, adopted March 27, 1899, granted to the Richmond and Petersburg Electric Railway Company a franchise to operate an electric railway on and along the Richmond and Petersburg Turnpike

The scene of the accident was at a street intersection in "a modern subdivision" just south of the corporate limits of the city of Richmond. Under these circumstances, I do not think it was negligence, as a matter of law, for the driver of the motor vehicle to attempt to cross the tracks of the street car company, when he knew that a street car, some 670 feet away, was approaching the crossing. This is true even though the driver saw four or five other motor vehicles traveling on the opposite side of the track from him. Both eye witnesses to the impact stated that after the truck was on the crossing, the vehicles in the northbound lane became "bunched"—that is, the operator of one of these vehicles attempted to pass the other, thereby taking up practically all of the traveled portion of the northbound lane, and effectually blocking Ford, for a few seconds, on the crossing.

Nor do I think that Ford was guilty of negligence as a matter of law in failing to get out of the truck before the impact. The interval, between the time that Ford saw that he was blocked and the impact, was one of just a few seconds. It was impossible for him to keep his eyes on the motor vehicle traffic in front of him, and approaching from his right, and at the same time keep his eyes on the street car approaching from his left. Before we con-

in Chesterfield County, Virginia, this being the main public highway connecting the Cities of Richmond and Petersburg, Virginia, which said franchise was extended and amended by resolution of said Board adopted February 14, 1901; and,

"Whereas, pursuant to the said franchises so granted to the said Richmond and Petersburg Electric Railway Company, the said Company occupied the said Turnpike and constructed thereon an electric railway extending along the eastern portion of the said Turnpike from the southern corporate limits of the City of Richmond, Virginia, to a point in Chesterfield County, Virginia, known as Bellwood, and at the said point the said line of the electric railway crossed the said Turnpike in a westerly direction and diverged from the said Turnpike over a private right-of-way through portions of Chesterfield County, and then returned to the western side of the said Turnpike at a point just south of Swift Creek, Chesterfield County, and thence extended along the said Turnpike in a southerly direction on the western side thereof to the corporate limits of the City of Petersburg, Virginia; * * *." The accident occurred between the corporate limits of South Richmond and Bellwood.

demn a person of negligence as a matter of law, we should take into consideration the fact that a person's mind does not act automatically, and that a street car in close proximity, approaching with undiminished speed at forty-five miles per hour, is not a thing which aids a normal person to choose the best course to pursue. After the danger is over, and we are reviewing the evidence in the quiet and calm of our studies, it is easy to see wherein a person might have chosen a wiser course. It is by no means certain that even if Ford had stepped out of his truck he would have been out of danger, because, as the street car struck the rear of the truck, the left front of the truck necessarily swung west toward the car, and Ford might have been caught in between the two.

I am not impressed by the statement in the majority opinion that because defendant had adopted a certain schedule for the operation of its cars between Richmond and Petersburg, it thereby became necessary for the operators of the street car to maintain a fast rate of speed. I am neither approving nor disapproving the schedule. If it did necessitate the operation of a street car at an unusually fast rate of speed, it thereby increased the duty of the operators to keep a more vigilant lookout for the traveling public, who had equal rights with defendant at street intersections. It must be remembered that Ford was operating his truck on a schedule, too. The bottles of milk on his truck were destined for delivery to residents within the area served and it was just as important to him and them to get the milk on time as it was for defendant and its passengers to reach Petersburg and way stations on schedule time.

Both plaintiff and defendant were engaged in legitimate enterprises. Each owed to the other the duty of so operating their vehicles as not to injure the life or property of the other. For the one to operate his car at forty-five miles per hour to within thirty feet of the other, who was obviously blocked on the crossing, without diminishing speed, was gross negligence; and, under the circum-

stances, whether Ford was guilty of contributory negligence is, to my mind, a question for the jury. If he was guilty of negligence, the doctrine of last clear chance applies.

This is not the first time that reasonable men have viewed the same evidence differently. This court, more than fifty years ago, in *Carrington* v. *Ficklin's Ex'rs,* 32 Gratt. (73 Va.) 670, at page 676, dealt with this problem as follows:

"It is a mistake to say, as is sometimes said, that when the facts are undisputed the question of negligence is necessarily one of law. This is generally true only of that class of cases where a party has failed in the performance of a clear legal duty. When the question arises upon a state of facts on which reasonable men may fairly arrive at different conclusions, the fact of negligence cannot be determined until one or the other of these conclusions has been drawn by the jury. The inferences to be drawn from the evidence must either be certain and incontrovertible, or they cannot be decided by the court. Negligence cannot be conclusively established by a state of facts upon which fair-minded men may well differ. Idem. [*Detroit & M. R. Co.* v. *Van Steinburg,* 17 Mich. 99] p. 123. To the same effect is *Sioux City & P. R. Co.* v. *Stout,* 17 Wall. (84 U. S.) 657 [21 L. Ed. 745]."

This statement of the law has been approved by this court in numerous cases and recently in *Virginian Ry. Co.* v. *Hillsman,* 162 Va. 359, 173 S. E. 503, and should be applied in this case.

CHINN, J., dissenting:

I am unable to concur with the majority of the court in holding that plaintiff's intestate, Ford, was guilty of contributory or concurrent negligence as a matter of law in driving on the railway track at the time he did. As appears from the opinion, this conclusion is based upon the ground that, "When Ford started across the railway track

he saw or should have seen that progress might be stayed by oncoming northbound traffic on the far side."

The evidence is, that after Ford had made his turn at Concord street and had started on across, the street car was 670 feet away; that the truck was moving in low gear and at a very slow rate of speed, and that he had to bring his truck to a stop, according to one of the plaintiff's witnesses, because his passage was blocked by a congestion of northbound traffic in front of him just before he reached the concrete, caused by several cars trying to pass each other at a rapid rate of speed, running abreast. I find no evidence to show, however, that Ford saw or should have seen before he started that this situation would exist. In fact, with the traffic conditions necessarily constantly changing it is difficult to see how Ford could have foreseen what the conditions would be when he got to the other side. The way might have been clear when he started across the track and have become blocked before he could get across. On the other hand, the way might have been blocked when he started across and yet clear before he reached the other side. In view of all the circumstances, whether Ford was guilty of contributory negligence in starting across the track when he did, was, I think, a question upon which fair-minded men may differ, and was, therefore, for the jury, and not for the court to determine.

If it be conceded, however, that Ford was guilty of contributory negligence which continued up to the time of the impact, I am likewise in disagreement with the majority opinion in holding that the doctrine of the last clear chance is inapplicable. While it is true that, as a general rule, there can be no recovery when the proximate and efficient cause of the accident involves the concurrent negligence of both plaintiff and defendant, when the circumstances are such that, notwithstanding the contributory negligence of the plaintiff, there is something in his condition or situation at the time of the injury to admonish the defendant that the plaintiff is not able to pro-

tect himself, and the defendant by the exercise of ordinary care should have avoided the accident, the humane doctrine of the last clear chance is applicable. *Norfolk Southern Railway Company* v. *Smith,* 122 Va. 302, 94 S. E. 789.

In *Virginia Electric & Power Company* v. *Vellines,* 162 Va. 671, 175 S. E. 35, 40, Mr. Justice Holt said: "There is this exception to the rule that prevents a recovery where there is continued and concurring negligence. If, while these conditions exist, the defendant sees, or in the exercise of reasonable care should have seen, the plaintiff is oblivious of his danger or unable to extricate himself from a position of peril in which his negligence has placed him, then a reasonable effort should be made to avoid an accident. * * * One cannot maim or injure another merely because he is negligent."

In the case at bar, the motorman on the street car saw, or at any rate should have seen, the truck when it was driven upon the track. He also saw, or should have seen, that the truck was moving very slowly and was halted in its progress on account of the fact that Ford's passage was blocked by traffic conditions, which conditions were as visible to the motorman, if he was looking, as he should have been, as they were to the driver of the truck. It was the motorman's duty when he saw this slow-moving truck, to reduce the speed of his car (*Virginia Electric & Power Co.* v. *Vellines, supra),* and approach the crossing so as to stop the car if necessary, in order that the truck might pass in safety. *Virginia Electric & Power Co.* v. *Mitchell,* 159 Va. 855, 164 S. E. 800, 167 S. E. 424. While it is true that the truck was on the right-of-way of the railway company, Ford was attempting to cross at a street intersection and had as much right on the crossing as the street car. He saw, or should have seen, that Ford, on account of the congestion of automobile traffic ahead of him which blocked his passage, was in a position of peril, from which at the moment he could not extricate himself. He could not go forward without coming into contact with the automobile traffic, and he could not, therefore, remove his

truck from the railway track. In other words, that Ford was caught in a trap could plainly be seen by the motorman in ample time to have avoided the collision and save Ford's life, and under the doctrine of the last clear chance it was his duty to have stopped his car, as he easily could have done, before it struck the truck. Instead of slackening his speed when he saw the truck go upon the crossing and exercising what would have been merely ordinary care under the circumstances, the motorman's own evidence shows that as he approached the crossing he turned on the full strength of the electric current, had the car "wide open" and going at top speed, and ran down this truck without making any effort to apply his brakes until he was within thirty or forty feet of the point of impact. The observations of Judge Kelly in *Virginia Railway & Power Company* v. *Smith & Hicks,* 129 Va. 269, 105 S. E. 532, 534, seem to me to be pertinent here, when he said:

"It is quite conceivable that a motorman might have the right-of-way (as did this motorman) and yet see, or be in a position to see, that unless he slackened his speed or stopped his car a collision with a vehicle about to cross ahead of him would be inevitable. In such a case, if the discovery of the inevitable was made, or ought to have been made, before it was too late for him to slow down or stop, he would have the last clear chance to avoid the injury, and the street car owner would be liable, regardless of the fact that the negligent conduct of the driver of the vehicle precipitated the situation and continued up to the moment of impact. This was the essential, though not actually expressed, holding in the *Meyer Case* [117 Va. 409, 84 S. E. 742], and is here one of the views which the jury might have taken of the evidence."

In *McNamara* v. *Rainey Luggage Corporation,* 139 Va. 197, 123 S. E. 515, 518, it is said:

"And upon the principle that one will be charged with notice of that which by ordinary care he might have known, it is held that if either party to an action involv-

ing the questions of negligence and contributory negligence should, by the exercise of ordinary care, have discovered the negligence of the other after its occurrence in time to foresee and avoid its consequences, then such party is held to have notice; and his negligence in not discovering the negligence of the other under such circumstances is held the sole proximate cause of a following injury."

In Sherman & Red. on Neg. (5th Ed.), section 99, it is said:

"The principle is that the party who had the last opportunity of avoiding the accident is not excused by the negligence of any one else. His negligence, and not that of the one first in fault, is the sole proximate cause of the injury."

The negligence of the plaintiff does not constitute a bar to recovery if, after the plaintiff's peril is, or ought to be, discovered, the defendant had a last clear chance to avoid the injury. *Virginia Railway & Power Co.* v. *Cherry,* 129 Va. 262, 105 S. E. 657.

Applying the foregoing principles to the facts of the instant case, it seems to me plain that the doctrine of the last clear chance is applicable, or at least the question of whether the defendant saw, or by the exercise of ordinary care should have seen, the plaintiff's peril in time to have stopped his car and avoid the injury, was a question which is concluded by the verdict of the jury in the plaintiff's favor.

It is further held that Ford was also negligent in failing to get out of the truck in time to save his life. While it is useless to discuss that question if the doctrine of last clear chance applies, it seems pertinent to enquire just at what time in his passage across the railway track this alleged act of negligence on Ford's part took place. The evidence shows that when he started across the track the street car was 670 feet away, and after he had gotten on the track, both Ford and Driscoll looked and the car was then 335 or more feet away. It cannot justly be said that

Ford was negligent in not getting out of the truck until he realized that the street car was not going to stop, as he had a right to assume it would do. How can the court say as a matter of law when Ford realized or should have realized this? It seems to me any answer to the question would be too speculative and conjectural to be considered. Of course, if he realized his danger in time to go through the procedure of opening the door and scrambling out of and away from the truck, he was negligent in failing to do so. The most that can be said is that the question is one for the determination of the jury, and is not within the province of this court to determine as a matter of law.

For the foregoing reasons, I think the judgment of the lower court should be affirmed.