### WITTER et al. v. HENRY.

No. 6037.

United States Court of Appeals
Fourth Circuit.

Argued March 9, 1950.

Decided April 8, 1950.

Fred B. Gentry, Roanoke, Va. (B. A. Davis, Jr., Rocky Mount, Va., on the brief), for appellant.

T. Warren Messick, Roanoke, Va. (Walter W. Wood, Roanoke, Va., on the brief), for appellee.

Before SOPER and DOBIE, Circuit Judges, and HUTCHESON, District Judge.

SOPER, Circuit Judge.

The instant case arose out of an accident involving a GMC tractor with a Fruehauf trailer attached, owned by Edgar F. Lehman and driven by his employee, Samuel LeRoy Witter, and a motorcycle owned and operated by Don L. Lawrence, while his friend and companion Melvin A. Henry was riding on the back seat. Both Lawrence and Henry died shortly after the collision as a result of the injuries sustained, and suits were filed against Lehman and Witter in the District Court to recover damages for the death of the decedents and for the damage done to the motorcycle. The cases were consolidated for trial. The jury was unable to agree in the Lawrence case and a mistrial was declared; but in the Henry case the jury returned a verdict of $12,500 from which this appeal is taken.

The evidence on behalf of the plaintiffs tended to establish the following facts. The scene of the accident was on U. S. Highway No. 330, a short distance north of the corporate limits of the town of Rocky Mount, Virginia. The surface of the highway was macadam, 19 feet wide, and was divided into two traffic lanes. The highway runs north toward Roanoke, Virginia, and south toward Rocky Mount, Virginia. The accident occurred on June 11, 1948, at approximately 7 P.M. At that time the weather was clear, the road was dry and it was still daylight. The tractor trailer was travelling north toward Roanoke and it was the intention of the operator to turn to his left across the lane leading to Rocky Mount in order to enter a tourist court located on the west side of the highway. The road was slightly down grade north of the point of the accident, and a person travelling north in the direction in which the defendants were proceeding had an unobstructed view ahead for 1500 feet measured from a point on the highway opposite the entrance to the motor court.

The tractor trailer was 42' in length. Immediately before the accident it was on its proper right-hand side of the highway and had slowed down to a speed of from 5 to 10 miles an hour before making the turn across the highway to the left. The driver gave no signal of his intention to turn as required by the Virginia statutes. When he started to turn the motorcycle was in plain sight 150 feet away, coming from the north on its right-hand side of the road at a speed variously estimated as from 35 to 80 miles an hour. Skid marks on the road north of the point of collision indicated that the driver of the motorcycle applied his brakes for a distance of 129 feet before striking the tractor. The motorcycle collided with the rear wheel of the tractor. At the moment of the collision the front wheels of the tractor had reached the western edge of the southbound lane and the tractor trailer was blocking the entire highway.

Shortly after the accident, the driver of the truck told an investigating officer that he did not see the motorcycle coming before the accident. At the trial he testified that he looked to his right before crossing the

road and saw no vehicles approaching and that he first saw the motorcycle when the front wheels of the tractor were crossing the western edge of the highway. At that time he said that he saw the motorcycle 200 feet away travelling toward him at a speed of 75 miles per hour.

It is obvious that there was sufficient evidence to take the case to the jury as to the charge of neglect on the part of the defendants; and it is equally clear that there was substantial evidence of contributory negligence by the deceased riders of the motorcycle in view of the excessive and unlawful speed at which it was being driven, according to the testimony of some of the witnesses. These questions were adequately covered in the judge's charge. The grounds of the appeal are: (1) that the evidence of contributory negligence was so clear that a verdict for the defendant should have been directed; and (2) that it was error for the judge to submit to the jury the question whether the defendants had the last clear chance to avoid the collision, and also to instruct the jury that the rule of the last clear chance applied to the decedents as well as to the defendants.

The judge's refusal to direct a verdict for the defendants on the ground of contributory negligence was clearly correct for the motorcycle was not being driven at an unlawful speed, according to some of the evidence, and the road ahead of it was clear until the tractor trailer was driven across it. The defendants were entitled to no more in this respect than the submission of the question of contributory negligence to the jury. The ruling of which the defendants chiefly complain is the charge of the judge that even if the jury should find that the decedent Henry was negligent, nevertheless they should find for his estate, if Witter, the driver of the truck, before or while making the turn, saw or in the exercise of ordinary care should have seen the motorcycle and realized that it was being operated so negligently as to make the turn dangerous while Witter still had a clear chance to stop his turning movement or otherwise prevent the collision and nevertheless continued to make the turn.

Defendant's counsel excepted to this instruction at the trial on the general ground that the doctrine of the last clear chance should not have been applied to the defendants, and made the specific additional objection that the charge applied the doctrine to the defendants but did not apply to Henry himself. Counsel contended that if Henry saw or should have seen the negligent situation, it was his duty to take suitable steps to avoid it. Thereupon the judge gave the additional instruction that if Henry saw or in the exercise of ordinary care should have seen that Witter was negligent when Henry had the time and opportunity to warn the driver of the motorcycle, and failed to do so, then the defendants would not be liable in this case.

The submission of the question of last clear chance as to the defendant was not error for under the law of Virginia the jury might have concluded in one aspect of the evidence that the approaching motorcycle was in plain sight of Witter when he started to drive the truck across the road, and that if he had looked, he would have seen it and realized that it was his duty to stop and permit the motorcycle to pass; and since he was driving slowly he had ample opportunity to do this and avoid the collision and should have done so, especially if the decedents were driving at such an excessive and reckless rate of speed that when they saw the crossing truck, they could not stop in time to avoid the accident.

On this appeal the defendants, however, contend that even if the last clear chance was properly submitted to the jury, it was error to apply it to the decedents as well as to the defendants. If this was error, the defendants cannot now complain because the additional instruction was given after their objection and in effect upon their request. Obviously it did them no harm. Morever, in any view, it accorded with the decisions of the Supreme Court of Appeals of Virginia in which it is held that the doctrine of last clear chance is mutual and applies to both parties in a negligent case. Of course only one party can have the last clear chance to avoid an accident, but this does not mean that only one party

in an action can invoke the application of the doctrine to his opponent, but rather that in the final analysis it can only be *successfully* invoked by one party. It is for the jury under proper instructions to decide which party did in fact have the last clear chance.

In Virginia Electric & Power Co. v. Vellines, 162 Va. 671, 683, 175 S.E. 35, 40, the court said: "This doctrine is not intended to protect the interests of any special class of litigants. Plaintiffs and defendants each may invoke it. Their rights and obligations are the same. 'The foundation of the doctrine is that the parties are guilty of concurring negligence, and there must be some condition, circumstance, or superadded fact which one of the parties saw, or by the exercise of ordinary care could have seen, that made it his duty to endeavor to avoid injury to the other negligent party and the obligation of discovering the last clear chance is mutual.'" See also Virginia Electric & Power Co. v. Ford, 166 Va. 619, 621, 186 S.E. 84; Stuart v. Coates, 186 Va. 227, 236, 42 S.E.2d 311.

In recent decisions of the Supreme Court of Appeals of Virginia concerning the application of the doctrine, a difference of opinion has arisen as to the circumstances under which the liability of a party against whom the doctrine is invoked is affected not only by the conditions which he actually saw at or immediately before the accident, but also by what he could have seen if he had used reasonable care. Anderson v. Payne, 189 Va. 712, 54 S.E.2d 82; Lanier v. Johnson, 190 Va. 1, 55 S.E.2d 442. The resulting discussion has brought the subject sharply to the attention of the court and it has once more been decided that a party is bound not only by what he saw but by what he should have seen, and also that the obligation of observing the last clear chance applies to both parties to a cause.

In reviewing the subject the court said, Anderson v. Payne, 189 Va. 712, 718-719, 54 S.E.2d 85:

"The doctrine is not to be allowed to wipe out or supersede the defense of contributory negligence. * * *

"It is a rule that must be applied with caution, and its application is not to be extended to become in fact a rule of comparative negligence. * * *

"The plaintiff is not entitled to recover under this doctrine on mere preadventure. The burden is on him to show by a preponderance of the evidence that he was in a situation of peril, of which he was unconscious or from which he could not by the exercise of reasonable care extricate himself, and that after his peril was discovered, or ought to have been discovered, the defendant had a last clear chance to save him by the exercise of ordinary care. * * *

"The obligation of observing the last clear chance is mutual. If the plaintiff had an equal chance with the defendant to avoid the accident, or the last clear chance to do so, the plaintiff cannot recover. * * *

"Whether the doctrine applies is to be determined by the facts of the particular case. The defendant's chance must be the last chance and a clear chance; and if the negligence of the defendant is not the sole proximate cause of the accident, but the negligence of the plaintiff continues and is also a proximate cause, as distinguished from a remote cause, the defendant is not liable. * * *"

We think that this summary of the doctrine as it has been applied in Virginia clearly required the submission of the question to the jury in the pending case, not only as to the defendants but as to the decedents.

Affirmed.