September 10, 1952.

Record No. 3948.

Present, Hudgins, C. J., and Eggleston, Spratley, Buchanan, Miller and Whittle, JJ.

The opinion states the case.

*Campbell & Campbell* and *George P. Young,* for the plaintiff in error.

*Gilmer, Wysor & Gilmer* and *A. M. Harman, Jr.,* for the defendant in error.

HUDGINS, C. J., delivered the opinion of the court.

B. C. Umberger instituted this action against Charles T. Koop to recover damages to his tractor-trailer truck that collided

with Koop's automobile which was being driven by his wife. Koop filed a cross-claim to recover damages to his automobile and for personal injuries sustained by him. The trial court entered judgment on the jury's verdict for $8,000 in favor of defendant on his cross-claim.

Plaintiff concedes that the evidence is sufficient to convict the driver of the truck of negligence, and states his contentions thus: "The two main questions involved are first, whether Koop, the cross-claimant, was guilty of contributory negligence as a matter of law, barring him from recovery, and, second, the proper construction of the Virginia Motor Code in regard to stopping before entering a highway from a side road."

The collision occurred about 8:00 p. m. on May 5, 1949, in or near the intersection of State Routes Nos. 101 and 100-Y, in Pulaski county. Route No. 101, formerly the old Lee Highway, is a main arterial highway, protected by stop signs, and runs approximately east and west. Route No. 100-Y is the connecting link between the new Lee Highway and Route No. 101. The intersection of these two highways is in the shape of the letter "Y," and they merge at the apex of the "Y." Route No. 100-Y extends slightly northwest from the point of the merger, and from the same point Route No. 101 extends slightly to the southwest. Each of the two highways is approximately 20 feet wide west of the apex, with gravel shoulders three feet wide. At the point of merger the hard surface is approximately 40 feet wide and gradually narrows to a width of 28 feet at a point 100 feet east of the merger, which is conceded to be the point of collision. There was a stop sign on Route 100-Y approximately 123 feet west of the merging point of the two highways.

Koop testified that he was sitting beside his wife as she drove east on Route 100-Y, and, as they approached the merger, her view to the east was unobstructed for more than 200 yards. She stopped at the stop sign, entered the intersection in second gear, crossed it traveling from 10 to 15 miles per hour, and was proceeding east on her right side, in the east-bound traffic lane, on Route 101, when he suddenly saw the headlights of the truck approaching from the east immediately in front of him. The force of the impact knocked him unconscious and he did not regain consciousness until he was *en route* to the hospital in Pulaski.

S. C. Shelton, "investigator" for the State police, testified

that he reached the scene approximately 30 minutes after the collision. He observed the vehicles locked together where they came to rest, half of the automobile being on the hard surface and the other half on the southern shoulder. The tractor was standing on the hard surface at an angle with the trailer, blocking eastbound traffic. Skid marks of the dual wheels of the tractor-trailer indicated that it had skidded a distance of 20 feet before the collision, and had driven the automobile backward at a five-degree angle 46 feet. Other marks on the highway indicated that the point of impact was 100 feet east of the apex of the ''Y,'' 223 feet from the stop sign on Route 100-Y, 18 feet 4 inches from the edge of the northern shoulder, and 9 feet 8 inches from the edge of the southern shoulder. Part of Shelton's cross-examination concerning the skid marks of the dual wheels of the truck was as follows:

''Q. So at that point could you tell us approximately how far from the south shoulder of the highway the skid marks from the tractor or from the trailer was the point at 'B' which you have designated on Exhibit E. H. M. No. 1? (the plot).

''A. There was no mark left on the road by the tractor that indicates its position at the time of impact.

''Q. What about the dual skid?

''A. The dual skid, itself, was to the left of the center of the highway.

''Q. How far to the left?

''A. It looked to be just about straddling. Let's see. The truck would be a maximum width of seven feet. It would be three and a half feet to the left of that center line.

''Q. So the dual skid marks at point 'B' were approximately three and a half feet south of the line which has been designated as the center line of 101 and about six feet from the south edge of the paved portion of the highway which at that point was twenty-eight feet wide?

''A. As well as I could determine, that is correct.''

The witness stated that the ''bumper of the truck was on top of the engine of the car causing the whole weight of the truck to force the car down, breaking it down and blowing the two front tires out at the same time and digging it into the hard surface.''

Frank Malone, operator of plaintiff's truck, testified that

as he came by Draper's Ferry, he shifted from the "overdrive," to the "4th gear," because the drizzling rain had made the road "slick," and he wanted to avoid applying his brakes on curves. Immediately after he crossed the bridge over a branch several hundred yards to the east of the "Y," intersection, he saw the lights of defendant's automobile; as it approached the intersection, it slowed down as if it were going to stop, but did not. After defendant's automobile entered the intersection, and when the vehicles were 150 feet apart, he realized that the operator of defendant's automobile was not going to stop. As he approached the intersection, traveling at approximately 35 miles per hour, he dimmed his lights as he was meeting defendant's automobile, but did not apply his brakes until the vehicles were 75 feet apart, because he thought the operator "would go on to her side of the road." When the vehicles collided, he had "practically stopped" the truck.

While the foregoing testimony of the truck driver, in the main, is corroborated by the testimony of Ira Earheart, a relief driver sitting in the cab, it is not in accord with the physical facts upon which both parties agreed. According to the Standard Tables of Speed and Stopping Distances of Motor Vehicles, a vehicle being operated at the rate of 10 to 15 miles per hour, travels 14 to 22 feet per second and, with proper brakes, can ordinarily be stopped in from 5.5 to 12.5 feet; one being operated at 35 miles per hour, travels 51.3 feet per second, and can ordinarily be stopped in 68 feet, after brakes have been applied. It follows that it required more than 10 seconds for defendant's automobile to be driven from a standing position at the stop sign to the point of impact, a distance of 223 feet. During the interval, plaintiff's truck would have to be driven more than 500 feet to collide with defendant's automobile at the point of impact. The fact that the truck, with brakes on, struck the automobile, weighing two tons, traveling 10 to 15 miles per hour, with such force that it drove it back in the opposite direction a distance of 46 feet, does not indicate that the truck was "practically stopped" at the moment of collision.

The photographs of the vehicles filed as exhibits, show that the force of the impact was on the left side of the truck,—that is, on the left front fender under the left front headlight, and on the left side of the radiator.

The parties concede that Mrs. Koop was driving the automobile as agent for her husband, and that her negligence, if any, is imputable to him.

Plaintiff bases his contention that defendant was guilty of contributory negligence as a matter of law mainly on the testimony of defendant himself. That part of defendant's testimony upon which he relies is: that when Mrs. Koop stopped the automobile at the stop sign an oil can resting on the floor rolled forward. Defendant "leaned forward and picked it up, * * * sat up and she (Mrs. Koop) went on into the intersection and there was just a split second at that time. I saw two headlights. They were directly in front of us; I would say so close to us (at) that time that they almost disappeared under the hood right down in front of us."

It is conceded that the headlights of the approaching truck were visible to the occupants of defendant's automobile for several hundred yards east of the intersection. Defendant stated that he did not see the headlights because he was looking to his right as he entered the intersection. The automobile necessarily crossed the west-bound traffic lane diagonally and entered the east-bound traffic lane of Route No. 101 at an acute angle. Ordinary care required the operator of the automobile to keep a proper lookout for traffic moving in both directions on Route No. 101. East-bound traffic would be approaching from behind defendant to his right. Defendant also testified that as his automobile left the apex of the "Y," it "went right across (the intersection) in a direction straight, which would be even with the shoulder of that road," and that plaintiff's truck collided with his automobile in the east-bound traffic lane of Route 101.

Even if it be held that defendant was guilty of negligence in failing to see the headlights of the truck until immediately before the impact, such failure was not necessarily a proximate cause of the collision. Whether such failure was a proximate cause of the collision was a jury question and was, by proper instructions, submitted to them. Mrs. Koop was killed in the accident and it is not known whether she saw the headlights of the approaching truck. It was her duty to see them. She may have seen them and decided that she had ample time in which to cross the west-bound traffic lane in safety.

We held in *Oliver* v. *Forsyth,* 190 Va. 710, 58 S. E. (2d) 49,

that Code, sec. 46-255, imposed upon the operator of an automobile the duty to stop before entering a main arterial highway, and ''to use reasonable care to maintain a lookout and not to drive across until in the exercise of reasonable care it appeared safe to do so.''

In *Temple* v. *Ellington*, 177 Va. 134, 12 S. E. (2d) 826, Mr. Justice Gregory, speaking for the Court, said: ''The statute (now Code, sec. 46-240) must be given a reasonable construction * * *. When a driver on a private road approaches an intersection, stops, and looks in both directions for approaching traffic on the public highway, acting as a reasonably prudent person exercising due care would act, he is not negligent as a matter of law if he attempts to enter the intersection under the belief that he has time and opportunity to cross safely.''

The evidence fully justified the trial court in submitting the question of the contributory negligence of Mr. and Mrs. Koop to the jury.

Plaintiff's next contention is based on the refusal of the trial court to instruct the jury that it was the duty of the driver of defendant's automobile to bring it to a stop ''at a point between the stop sign and the highway where she could effectively see approaching traffic on the highway by the exercise of reasonable care,'' and in lieu thereof instructing the jury that Mrs. Koop was guilty of negligence if she ''failed to bring the said automobile she was driving to a complete stop at the stop sign immediately before entering Highway No. 101.''

The question presented is the construction of the language ''bring his vehicle to a stop immediately before entering'' a main arterial highway. This language, or language of a similar import, is used in three sections of the 1950 Code—46-240, 46-209(8), and 46-255.

''Immediately'' is not a word of very precise signification. It does not necessarily import the exclusion of all interval of time or space. Its meaning is determined by the context in which it is used and the purpose for which the statutes were enacted. The purpose of the pertinent provisions of the statutes is to require the operator to bring his motor vehicle to a timely stop before entering the traveled portion of the highway, ''or, as sometimes stated, to assure a proper lookout by the operator of the emerging vehicle. * * *'' 60 C.J.S., Motor Vehicles, sec. 345, p. 805.

■ The State Highway Commission, by section 46-184 of the 1950 Code, is authorized to adopt a uniform system of markers and signs regulating traffic upon the highways. Failure of the operator of a motor vehicle to comply with these statutes constitutes a misdemeanor. If an operator stops at a stop sign he certainly cannot be convicted of a crime as he has a right to assume that the Highway Commission has erected the sign at a proper place for him to stop. Whether such operator, after complying with the law in this respect, is negligent in entering the intersection, depends upon the circumstances of each particular case.

■ The statutes do not require the operator of a motor vehicle to bring his vehicle to a stop within a stated number of feet from the intersection. The sign is notice that danger lies ahead, and that he must stop at a point from which, in the exercise of ordinary care, he can see traffic moving on the highway he proposes to enter. The duty to look requires not only the physical act of looking, but reasonably prudent action to avoid the danger which an effective lookout would disclose. *Via* v. *Badanes,* 189 Va. 44, 52 S. E. (2d) 174. If the operator of defendant's automobile stopped at the stop sign, she had an unobstructed view of Route 101, both east and west of the intersection, and at a place where she had a right to assume that the law required her to stop. Mrs. Koop was not required to make two stops before entering the intersection, unless traffic conditions were such that she could not proceed in safety.

■ The objection of plaintiff to this amendment to the instruction is not well taken.

Plaintiff's next contention is that the doctrine of last clear chance is not applicable to any phase of the testimony, and that the trial judge committed reversible error in instructing the jury on the principle.

■ The basis of the doctrine of last clear chance is that, notwithstanding the prior negligence of plaintiff, the subsequent negligence of defendant is the sole proximate cause of an accident. In order for a defendant to be held liable under this doctrine, it must appear from the evidence that the plaintiff has negligently placed himself in a position of imminent peril and he is either unaware of his perilous situation, or unable to escape therefrom, or both, and defendant was apprised of his presence

and realized, or, in the exercise of reasonable care, should have realized his danger in time to avoid the accident, and failed to do so. *Anderson* v. *Payne,* 189 Va. 712, 54 S. E. (2d) 82; *Lanier* v. *Johnson,* 190 Va. 1, 55 S. E. (2d) 442; *Burton* v. *Oldfield, ante,* p. 43, 72 S. E. (2d) 357, opinion by Mr. Justice Buchanan, announced at this session of the Court.

The jury had a right to conclude from the evidence that the driver of the truck, when several hundred yards east of the intersection, saw defendant's automobile approaching when it was several hundred feet west of the intersection. He saw defendant's automobile "come out in the intersection," without stopping, when he was 150 feet away. He did not apply his brakes to reduce his speed until he was 50 to 75 feet away, because, he said, "I thought she was going on her side of the road." There was ample space (approximately 14 feet of hard surface) on his right in which he could have turned and passed defendant's automobile safely. Thus, the driver of the truck, by his own admission, saw defendant in a position of peril when he had time and opportunity to avoid the collision, either by immediately applying his brakes or turning to his right, neither of which he did. If Mrs. Koop was negligent in entering the intersection, as plaintiff contends, the jury had a right to believe that the operator of the truck, in the exercise of ordinary care, had a last clear chance to avoid the collision, and failed to do so.

The trial court, at the request of plaintiff, amended several instructions applying the doctrine of last clear chance to the action of Mrs. Koop.

Plaintiff, in support of the amendments, relies on that part of the evidence which tends to prove that before, and as Mrs. Koop entered the intersection, she had an unobstructed view of the approaching truck, and traveling at a speed of 10 to 15 miles per hour, she could have stopped within a few feet. The doctrine of last clear chance presupposes the negligence of both parties and that one discovered, or in the exercise of ordinary care, should have discovered, that the other negligent party was in a position of peril, and was unconscious thereof, or, if conscious of it, was unable to extricate himself therefrom, or both. There is no evidence tending to show that Mrs. Koop discovered, or in the exercise of ordinary care, should have discovered, that the driver of the truck was in a position of peril. He testified that he was

approaching the intersection at a speed of 35 miles per hour, on his side of the highway, and as he was meeting the automobile he dimmed his lights. The physical facts show that when the vehicles collided, the right side of the automobile was approximately 6 feet from the edge of the southern shoulder and that the truck had crossed the center line of the twenty-eight foot highway. In view of this evidence, the negligence of the truck driver could not have been apparent to Mrs. Koop until just before the impact, too late for her to take effective action. *Hardiman* v. *Dyson, ante,* p. 116, 72 S. E. (2d) 361, opinion by Mr. Justice Spratley, announced at this session of the Court.

The doctrine of last clear chance is applicable in a proper case to either a plaintiff or a defendant, but not to both parties involved in the same accident. In *McNamara* v. *Rainey Luggage Corp.,* 139 Va. 197, 210, 123 S. E. 515, the following excerpt from Street's Foundations of Legal Liability, Volume 1, p. 136, is quoted with approval:

"It is seen that wherever the court or jury can see that the harm complained of was proximately caused by the negligence of one of the parties, while the negligence of the other was only remotely connected with that harm, the person whose negligence is the proximate cause must be held responsible. If that person is the defendant then the plaintiff may recover; if that person is the plaintiff, himself, then the action must fall.

"This principle is neatly and accurately summed up in the doctrine of 'the last clear chance,' which is to the effect that whenever the respective acts of negligence on the part of the plaintiff and defendant are not actually concurrent, but one succeeds the other by an appreciable interval, the person who has the last clear chance to avoid the impending harm and negligently fails to do so is chargeable with the whole." To the same effect see *Virginia Elec., etc., Co.* v. *Ford,* 166 Va. 619, 186 S. E. 84; *Willard Stores* v. *Cornwell,* 181 Va. 143, 23 S. E. (2d) 761.

If a plaintiff's negligence is a proximate cause of the mishap the doctrine of last clear chance is not applicable. It is only applicable when a party's negligence becomes a remote and not a proximate cause. If both plaintiff and defendant have an equal opportunity to avoid a mishap the doctrine has no application as the negligence of both is simultaneous and concurring, and neither is entitled to recover. *Whichard* v. *Nee, ante,* p. 83,

72 S. E. (2d) 365, opinion by Mr. Justice Spratley, announced at this session of the Court.

 It follows that the instructions, as amended, applying the doctrine to Mrs. Koop, were erroneous, but they were not prejudicial to plaintiff because they presented a more favorable case to the jury than was justified by his evidence. Other instructions clearly stated the law of the road applicable to the evidence and the duties that each party owed the other.

W. E. Woodyard, a witness for defendant, testified that on the night of the accident he was driving a short distance behind the truck, saw the collision, drove up and stopped at the scene as Malone stepped out of the truck, and before he had an opportunity to ascertain the extent of the injuries to the occupants of defendant's automobile. Together the witness and the truck driver went to the automobile and, while attempting to ascertain the extent of the injuries, Malone repeatedly said to the witness: "I tried to keep from hitting. I done everything I could to keep her from hitting * * * She came to a full stop and I blinked my lights to signal I was going on through the intersection."

Malone, on cross-examination, denied making the statements to Woodyard.

The plaintiff assigned as error the refusal of the trial court to instruct the jury that the statements were admissible only for the purpose of affecting the credibility of the witness.

 The trial court correctly held that the statements were a part of the *res gestae,* and hence were admissible as substantive evidence and not merely as affecting the credibility of Frank Malone. The statements were made a few seconds after the accident and simultaneously with Malone's realization of the seriousness of the injuries inflicted upon the occupants of defendant's automobile. The admissibility of such verbal statements as a part of the *res gestae* rests on the conception that the circumstances of the occasion so excite and control the mind of the speaker that his statements are natural and spontaneous, therefore, sincere and trustworthy, and not the mere narration of past events.

Considering the case as a whole, we find no reversible error in the record, and hence affirm the judgment of the trial court.

*Affirmed.*

Buchanan, J., concurs in the result.